AETNA INSURANCE CO. v. FOWLER.

PRINCIPAL AND SURETY—BOND OF AGENT—RELEASE OF SURETY.
   A surety upon a bond conditioned for the payment by an agent to his principal of all the moneys collected by him on the latter's account is not discharged from liability for future defalcations of the agent by the failure of the principal to notify him that the agent has failed to remit as required by his instructions; but failure to impart its knowledge of an actual defalcation by the agent will have such effect.

Error to Saginaw; Wilber, J. Submitted January 15, 1896. Decided March 11, 1896.

*Assumpsit* by the Aetna Insurance Company against Charles G. Fowler, Chester Brown, and Gustavus H.

Fuerbringer upon an indemnity bond. From a judgment for plaintiff on verdict directed by the court, defendants Brown and Fuerbringer bring error. Reversed.

*Wood & Joslin,* for appellants.

*Weadock & Purcell,* for appellee.

MONTGOMERY, J. Action on the bond of an insurance agent. Defendant Fowler was employed as the agent of the company at Saginaw, and in December, 1883, executed a bond, with his codefendants as sureties, the conditions being as follows:

"The condition of this obligation is such that whereas the above-named Charles G. Fowler has been appointed agent of the Aetna Insurance Company in Saginaw, Saginaw county, State of Michigan, who will receive as such agent sums of money for premiums, payments of losses, salvages, collections, or otherwise, for goods, chattels, or other property of the said insurance company, and is to keep true and correct accounts of the same, pay over such money correctly, and make regular reports of the business transacted by him, to the said Aetna Insurance Company, and in every way faithfully perform the duties as agent, in compliance with the instructions of the company through its proper officers, and at the end of the agency, by any cause whatever, shall deliver up to the authorized agent of said company all its money, books, and property, due from or in possession. Now, then, if the aforesaid agent shall faithfully perform all and singular the duties of the agent of the Aetna Insurance Company, then this obligation shall be null and void."

The instructions to agents were to send statements of all business transacted during the previous month as early as the 12th of each month. The testimony shows that for three months prior to September 1, 1893, the defendant Fowler failed to send remittances, and it was shown that it was not the custom of the company to insist upon absolute promptness in remittance, but that after three months' delay it was the custom of the company to discharge the delinquent agent. The testimony further shows that in

the latter part of July or the first of August, 1893, the special agent of the company, a Mr. Neal, visited Saginaw, and, as he described it, found the agency in a "rocky condition;" and, while counsel were disagreed as to the effect of his testimony, we think it is at least open to the construction that he then learned that Fowler had misappropriated the funds of the company, and invested them in realty. The circuit judge directed a verdict for the plaintiff. The recovery included a shortage in accounts before August 1st, and a shortage of $344.16 arising from the August business.

Two contentions are made: *First*, that it was the duty of the company to notify the sureties of any delay in the remittance, at once, and that the continuance of the agent after failure to remit in accordance with the instructions of the company to agents released the sureties as to future transactions; and, *second*, that the company, on the discovery of the misappropriation of funds, August 1st, was bound to discharge the agent, or, at least, the sureties were not bound to respond for his future defalcations, unless, after being informed of his previous acts of dishonesty, they consented to his retention.

We think that the court below correctly ruled that the mere fact that the company had knowledge that the agent had failed to remit did not impose upon it the duty to notify the sureties or discharge the agent. *Watertown Fire Ins. Co.* v. *Simmons*, 131 Mass. 85 (41 Am. Rep. 196); *Atlantic, etc., Tel. Co.* v. *Barnes*, 64 N. Y. 385 (21 Am. Rep. 621). The duty which the company owed to the sureties was not a duty of active vigilance, to ascertain whether the agent had been guilty of fraud (the sureties' undertaking was a guaranty of his fidelity), but what was due from the employer was good faith to the sureties. Just as it would have been a fraud to withhold knowledge of previous dishonesty of the agent presumably not known to the sureties, but possessed by the company, so it would be a breach of good faith for the company to continue the agent in a place

of trust after discovering his dishonesty or defalcation, which is presumptively and in fact unknown to the sureties, and without notifying the sureties of the facts, and giving them an opportunity to elect as to whether they will continue the risk. This is the doctrine of the leading case of *Phillips* v. *Foxall*, L. R. 7 Q. B. 666. The cases of *Watertown Fire Ins. Co.* v. *Simmons* and *Atlantic, etc., Tel. Co.* v. *Barnes* are not inconsistent with this. The substance of the holding in each of these cases is that the mere failure of remittance does not necessarily amount to notice of dishonesty on his part, and that applies to the present case as regards the charges occurring before August. There is no evidence that prior to August the company had actual notice that Fowler had converted any of the funds to his own use, or was more than negligent in remitting or collecting the premiums; but as to the transactions in August the case is different. Under section 9191, 2 How. Stat., it is made an offense for an insurance agent to receive and invest money of the company without its assent; and, as we before stated, we think there was testimony tending to show notice to the company about the 1st of August that Fowler had invested the funds of the company in realty. If the company, through its special agent, then knew this fact, it cannot be said not to have had notice of the dishonesty of the agent; and, if it had such notice, it was the duty of the company not to longer trust its funds with the agent until the sureties had consented, with knowledge of the facts, to be held responsible for the acts of a dishonest agent. See, further, 2 Brandt, Sur. § 423; *Connecticut Mut. Life Ins. Co.* v. *Scott*, 81 Ky. 540.

Judgment reversed, and a new trial ordered.

The other Justices concurred.