CUMBERLAND BUILDING LOAN ASSOCIATION *v.* GIBBS.

1. BONDS—CONSTRUCTION—CONVERSION OF MONEYS COLLECTED.
   A State agent's contract with a loan association invested him with authority to procure applications for shares, to collect the first month's dues thereon, and to "perform such other duties as may be required of him." A bond executed in contemplation of the terms of the contract was conditioned on the agent's faithful performance of all his duties. Subsequently the agent was authorized by the association to make collections, in the capacity of State agent, other than those specified in the contract. Moneys so collected were fraudulently converted to the agent's own use. *Held,* that the default was within the terms of the bond.

2. SAME—DELAYED REMITTANCES—FAILURE TO NOTIFY SURETY.
   The obligee's failure to notify the surety of the agent's delay in making remittances, which it attributed, not to dishonesty, but to negligence merely, did not release the surety.

Error to Ingham; Person, J. Submitted January 4, 1899. Decided February 6, 1899.

*Assumpsit* by the Cumberland Building Loan Association against L. Colfax Gibbs as principal, and William O'Connor as surety, upon an agent's bond. From a judgment for plaintiff, defendant O'Connor brings error. Affirmed.

   *Jason E. Nichols (Charles W. Nichols,* of counsel), for appellant.

   *E. S. Avery,* for appellee.

MOORE, J. The defendant Gibbs was appointed by the plaintiff its general agent for the State of Georgia. He was required to give a bond, which was signed by Mr. Gibbs as principal; and Mr. O'Connor as surety. This is an action on the bond. The trial was before the circuit

judge, who rendered a judgment in favor of plaintiff for part of its claim, and refused to render a judgment in its favor for the larger portion of its claim.    Defendant O'Connor appeals from the judgment.

Some of the terms of the contract are as follows:

"That, in consideration of the agent's agreements herein contained, the association hereby appoints the said L. C. Gibbs its general agent in and for the State of Georgia, with authority to procure applications for shares in the said association, to collect the first month's dues thereon for the association, and to procure applications for the fully-paid shares of the association, and perform such other duties as may be required of him, subject to the rules and regulations of the association, and such other instructions as shall be given to him from time to time by the association.    The agent shall receive, for services properly rendered under this contract, a commission on all dues actually collected and paid to the association, or deposited to the credit of the association in a depository designated by the president, secretary, or manager of agencies, in the following classes, as follows: On class G, Special ( limited withdrawals): On first month's dues, one hundred per cent.; one hundred per cent. on second month's dues, less cost of collection; on next ten months' dues, thirteen per cent.; on the thirteenth to the one hundredth month, three per cent.    On class A ( free withdrawals): One hundred per cent. first month's dues; eighty per cent. second month's dues.    *    *    *

"The agent covenants and agrees with the association as follows:    *    *    *    To immediately forward all applications for shares to the home office, with the net amount due on first month's payment; to transmit to the home office of the association, on the fifth and twentieth of each month, and at all other times when requested by either the president, secretary, or manager of agencies, all funds and property in his hands belonging to the association; all checks, drafts, money orders, or express orders to be made payable to the order of the Cumberland Building Loan Association."

The conditions in the bond are as follows:

"The condition of this obligation is such that whereas, the above-bounden principal has been appointed by said party of the second part as its State manager for Georgia,

for the purpose of selling stock, and of performing such
other duties in connection therewith as may be required
by said party of the second part: Now, if the said princi-
pal shall well and faithfully discharge his duties as such
State manager, and if the said principal shall well and
truly pay over all moneys at any time coming into his
hands, or at any time collected by or received by him, or
for which he may be liable, which it shall be his duty to
pay over as such State manager, whether the same shall
be or shall have been received or liability therefor incurred
by him personally and solely, or through or together with
any copartner, co-agent, subagent, or other person, in-
cluding all money so received and all liability incurred
prior to the date of this instrument, if any such there be,
as well as money received or liability incurred thereafter,
as also all moneys which he now owes or hereafter may
owe said party of the second part, or for which he may be
liable to the said party of the second part, on account of
loans or advances made to said principal during the con-
tinuance of the present agency of said principal, or any
future agency, for the purpose of enlarging his business or
otherwise, and whether the said principal shall have made
any express promises to repay the same or otherwise, then
this obligation shall be void, otherwise to remain in full
force and effect; it being understood and agreed that this
obligation shall not be annulled or revoked without the
consent of the said party of the second part, but shall be
and remain in force so long as said principal shall continue
to be the agent of the said party of the second part,
whether under his existing appointment or any future one,
and whether such present or future agency be sole, or
whether said principal be joined with any other person or
persons, and until all transactions under such agency shall
have been finally adjusted and settled, and all liabilities of
said principal hereinbefore referred to shall have been dis-
charged."

The court found, among other things, the bond was
executed, not only in contemplation of its own terms, but
in contemplation of the terms of the contract.

While he was employed as State manager, October 10,
1896, Mr. Gibbs was specially authorized to make collec-
tions for the plaintiff during that month. It was not part
of his ordinary duty as State manager to make collections

other than the dues for the first month, nor was he empowered to do so, except by special authority; but he was so authorized because he was State manager, and continued to make collections by the tacit consent of the association.   Mr. O'Connor was not informed of this additional duty until Mr. Gibbs had severed his relations with the plaintiff.   November 2, 1896, Mr. Gibbs made a report, but did not remit $50 of his collections, but sent his note therefor, due in 30 days.   Mr. O'Connor had no knowledge of the transaction.   January 2, 1897, plaintiff sent to Mr. Gibbs a statement of account, including this $50 note, showing a balance due it of $186.37.   Instead of paying this amount, Mr. Gibbs sent the company his note for the amount, due in 90 days.   This was done without the knowledge or consent of Mr. O'Connor.   The court held, as a matter of law, that this action extended payment of money due without consent of the surety, and released Mr. O'Connor.

The judge further found the plaintiff did not suspect Mr. Gibbs of any criminal intent in not remitting the money, but rather attributed it to his negligence.   The judge also found Mr. Gibbs received of or collected for plaintiff, as general manager and agent under the contract, the further sum of $193, which was not first months' dues, which he fraudulently converted to his own use. The trial judge further found:

"But I do not find that plaintiff came to believe that defendant Gibbs' conduct in the premises was wrongful or criminal until after the liability in this clause mentioned had been incurred.   On the contrary, I find that plaintiff looked upon his delays in remitting as mere carelessness."

The judge found, as a matter of law, the defendants were liable for this amount and interest, and rendered a judgment for $206.81.

It is claimed by defendant that the making of these collections was no part of the duty of Mr. Gibbs as manager, and therefore the surety is not liable.   The contract

provided that, in addition to procuring applications for shares and collecting first months' dues, Mr. Gibbs should "perform such other duties as may be required of him." The bond recited the appointment of Mr. Gibbs, as State manager, "for the purpose of selling stock, and of performing such other duties in connection therewith as may be required by said party of the second part." The collection of moneys due the company in Georgia was germane to the business for which Mr. Gibbs was employed, and was within the terms of the bond and contract.

It is also claimed that, when plaintiff learned Mr. Gibbs was not remitting as he agreed, it was its duty to inform Mr. O'Connor, and allow him to pay up any arrearages, and end his liability. Because this was not done, it is said Mr. O'Connor is not liable; citing *Ætna Ins. Co.* v. *Fowler*, 108 Mich. 557. We think this case does not sustain the contention of counsel, but, on the contrary, is against their contention. As already stated, the trial judge found that plaintiff did not suppose Mr. Gibbs had fraudulently appropriated the money, but supposed Mr. Gibbs' failure to remit was due to negligence. A failure to notify the surety of what the plaintiff supposed was mere negligence in making remittances will not release the surety. 24 Am. & Eng. Enc. Law, 796; 2 Brandt, Sur. (2d Ed.) §§ 423, 424; *Ætna Ins. Co.* v. *Fowler*, *supra*, and cases cited therein.

Judgment is affirmed.

The other Justices concurred.