CASE 59—ACTION ON BOND OF CASHIER OF BANK—MAY 8.

# Grant County Deposit Bank v. Littell's Ex'x.

### APPEAL FROM GRANT CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF FOR ONLY PART OF ITS CLAIM AND IT AP-
PEALS, AND DEFENDANT PROSECUTES CROSS APPEAL. REVERSED ON
ORIGINAL AND AFFIRMED ON CROSS APPEAL.

LIABILITY OF SURETIES OF CASHIER—FAILURE TO NOTIFY SURETIES OF
PRIOR DEFAULT.

Held:   1. Where a bank cashier renewed his bond each year, and
the directors published each year a report showing that all was
right, the fact that they might, by slight diligence, have dis-
covered at the end of the first year that the cashier had per-
mitted large overdrafts, does not release the sureties from liabil-
ity for overdrafts permitted in subsequent years.

2. The gross negligence of the directors in failing to discover over-
drafts permitted by a bookkeeper who was promoted to the office
of cashier does not release the sureties in his bond as cashier
from liability for subsequent overdrafts permitted by him, though
the directors had published reports, before the sureties became
bound, showing that all was right; there being no actual fraud
or bad faith on the part of the directors.

OPINION OF THE COURT BY CHIEF JUSTICE HAZELRIGG—REVERSING
ON ORIGINAL AND AFFIRMING ON CROSS APPEAL.

On January 8, 1892, one Nesbitt was elected cashier of the
appellant bank, and on the 22d of the month he executed
a bond for the faithful performance of his duties; and,

among other things, he and his sureties covenanted that they would "make good to said bank, directors, stockholders, and depositors, any loss that might [may] result from overdraft," etc., "or other mismanagement on the part of said C. C. Nesbitt, cashier," etc.   Nesbitt was re-elected cashier in each successive January of the years 1893, 1894, 1895, and 1896, and executed a bond of similar. character.   William Littell, along with others, signed each of the five bonds, and in June, 1896, died, leaving a widow, who qualified as his executrix, and who is now the appellee.   In July, 1896, it was discovered that, beginning in 1892, and continuing for each subsequent year, Cashier Nesbitt had permitted large overdrafts, and of these there were in amount some $29,000 on insolvent persons.   It appears that the co-sureties of Littell have paid to the bank their *pro rata* share of this loss, but his executrix, in this suit against her for the *pro rata* share of her husband, resists recovery on these grounds:

It is urged that when Nesbitt was first elected cashier, and was permitted to execute the first bond, he had already, as former bookkeeper in appellant bank, and while acting as cashier in lieu of the regular cashier, been guilty of overdrawing the account of an insurance firm of which he was a member to the extent of some $11,000 during the course of a few years, and this fact ought to have been discovered by the exercise of the slightest care on the part of the directory of the bank, but, whether discovered or not, it was not made known to the sureties, but, on the contrary, published reports showing the bank to have been in a prosperous condition were made, and no reference was made to overdrafts in such reports; and, further, that the use of even slight diligence on the part of the directory at the end of the year 1892, and of each successive year,

would have discovered the misconduct of the cashier in permitting overdrafts during the current year, and the sureties on the bond were entitled to know the true condition of the bank, and certainly to know if the cashier were violating the covenants of his bond, but, instead of being so informed, the sureties were induced to sign again and again the bonds of the cashier for these successive years, by reason of the misleading reports made by the cashier, and indorsed by the directory. The trial court held the appellee liable for the sureties *pro rata* of the loss of 1892, amounting to $233, and dismissed the petition as to the balance of the claim.

The contention of the appellee is based on the principles announced in Graves v. Bank, 10 Bush, 23. It was said, however, in that case that the sureties could not claim immunity on account of any published reports made after they became sureties. These reports, the court said, were sworn to by the cashier, and it was to be assumed that the directory were induced to certify to their accuracy upon the representations of the cashier of what appeared from the books of the association as kept by the cashier, and, further, that the covenant of the sureties was unconditional, to the effect that their principal should well and truly perform his duties, and no failure of duty on the part of the directors, short of actual fraud or bad faith, can be deemed sufficient to exonerate them from its performance. But in that case the recusant cashier was a defaulter at the time of his election to his later position, having misappropriated large sums from the banking firm of Burtin, Mitchell & Co., the assets of which firm the Lebanon bank bought. The latter bank accepted the notes and bills of the former concern as amounting to $57,000, whereas they in -fact amounted to only $39,000. And this

court, in discussing this feature of the case, brought it within the rule announced,—that the directory had been guilty of actual fraud or bad faith at the very inception of its business.  The cashier in that case had been guilty of outright embezzlement, while in this he only permitted his firm to overdraw its account, and of this it is not pretended that the directory had any knowledge.

In Morse, Banks, section 21, notes, the author says: "If an officer already in the service of the directors is re-elected, they are not bound to state to his sureties offered on his new bond that he is careless, stupid, negligent, or a poor accountant.  They are not bound to state that they themselves have been remiss in examining into the condition of the bank, the amount of funds on hand, and the correctness of the accounts.  .  .  .  But if they know that there is in fact a defalcation that is existing at the time, which will be covered by the terms of the proposed bond, they are bound to state it, and their failure to do so is such a breach of good faith as will invalidate the bond."

In Wayne v. Bank, 52 Pa. St., 343, the cashier had already defaulted, though the fraud had not yet been detected or suspected by the bank officers.  The surety sought to show in defense that, if the officers had examined the books of the bank at the time of the giving of the bond, they would have been able to detect the then existing deficiency.  The court held that a fraudulent concealment of the defalcation at the time the bond was executed would have constituted a defense, but that there was no such concealment, since there was no knowledge, and that the constructive notice in knowledge relied on was not sufficient; that the officers were under no obligation to investigate the books when the bond was given, and their failure

to do so, and ignorance consequent upon such failure, con stituted no basis for a defense.

In Tapley v. Martin, 116 Mass., 275, cited in Brandt, Sur., section 422, where the officers of the bank had been gross- ly negligent in discovering frauds committed by a book- keeper, who was afterward promoted to the office of cash- ier, and gave bond as such, the sureties were held not to be released, for want of investigation by the officers. To the same effect is the case of Bostwick v. Van Voorhis, 91 N. Y., 333. The case of Insurance Co. v. Scott, 81 Ky., 540, is strongly in point, although it is not the case of a cashier or bank officer. Scott and Leathers were sureties of one Ryan to a life insurance company for their principal's per- formance of his duties as agent. When the bond was ex- ecuted, Ryan, with one Carpenter, was already in default with his company in the sum of $21,000, but this was un- known to the company or to the sureties. The company, however, as said by this court, "could, by the use of proper business diligence, have discovered it." And in disposing of the defense the court, by Chief Justice Hargis, said: "We are satisfied that the failure to use such diligence, and inform the sureties of the results before they became bound, was not a fraud; there being no purposed suppres- sion of the fact, or intentional failure to investigate Ryan & Carpenter's accounts, to avoid learning their condition. . . . It was more their duty (the sureties'), than that of appellant (the company), to make inquiry of Ryan's condi- tion before they bound themselves for him; and they can not, therefore, complain of appellant's failure to investi- gate his accounts. They were entitled to good faith at the hands of appellant; no more."

We have examined the somewhat voluminous proof touching Nesbitt's connection with the bank as bookkeeper

for Dr. Frank, the former cashier of appellant bank, and
are satisfied that there is no basis whatever for a charge of
fraud or bad faith on the part of the directory, or any
member of it, towards the sureties of Nesbitt; and we think
appellee is liable on each of the bonds sued on. The judg-
ment is reversed on the original and affirmed on the cross
appeal.