## INDIVIDUAL BOND DOES NOT COVER FIRM INDEBTEDNESS.

Superior Court of Cincinnati.

O. H. Olmsted et al v. W. H. Edwards et al.*

Decided, December 22, 1913.

*Sureties—Equivocal Language in Bond Will be Construed Against the Principal, When—Surety on Bond Covering Individual Indebtedness—Not Bound to Make Good Indebtedness of a Partnership of Which His Co-Obligor is a Member.*

1. Where a principal furnishes his agent with a special, printed form of bond for the purpose of having the same executed by such agent and a surety, and said form of bond contains language which, under the circumstances, is uncertain and equivocal as to the nature of the liability assumed by the surety and the latter is misled thereby, the court, in an action against the surety on such bond, will construe the uncertain and equivocal language in the sense most favorable to the surety.

2. A surety who executed a bond by which he became liable for the accounting of his co-obligor as agent of the obligee, and who, when he signed the instrument believed and had been so led to believe by the terms of the bond and the circumstances surrounding the transaction, that such co-obligor was individually the agent of the obligee, is not liable on such bond for the default, as agent of the obligee, of a co-partnership firm of which his co-obligor was a member nor for such share of the firm's indebtedness to the obligee as was incurred by the conduct of his co-obligee while acting as a member of such firm.

*A. C. Shattuck,* for plaintiff.
*John C. Healy* and *A. L. Herrlinger,* contra.

Pugh, J.

This case comes before the court on the motion of the plaintiffs for a new trial. At the close of the testimony, the court directed the jury to return a verdict in favor of the defendant,

---

*Affirmed by the Court of Appeals, *Olmsted* v. *Albers,* 26 C.C.(N.S.), —.

H. W. Albers, and this action of the court, it is claimed, was contrary to law.

The suit was originally brought against W. H. Edwards and H. W. Albers, but, as Edwards did not answer, a judgment by default was taken against him and the trial, which was thereafter had, involved only such issues as were raised by the pleadings between the plaintiffs and the defendant, Albers.

At trial, the plaintiffs offered in evidence the default judgment, and it is assigned as error in this motion that the court refused to admit it. Inasmuch as the judgment was rendered in this very case and was part of the record, the court took judicial knowledge of it, but in view of the ruling of the court on the main issue involved, it is unnecessary here to consider whether such judgment was of any effect as far as the defendant Albers was concerned.

(1). The partnership firm of Olmsted Bros. of Cleveland, state agent in Ohio of the National Life Insurance Company of Vermont, on December 15, 1893, entered into a written contract with the firm of Van Buren & Edwards of Cincinnati, whereby the latter firm was appointed agent of said insurance company for Hamilton county and other southern counties of Ohio upon certain terms and conditions set out in said agreement.

Van Buren & Edwards in April, 1894, assigned their contract to the firm of Edwards & Evans, and on May 9, 1894, this assignment was approved and accepted by Olmsted Bros. as follows:

"CLEVELAND, OHIO, May 9, 1894. "The above assignment is hereby approved and the co-partnership of W. H. Edwards and John G. Evans recognized under the within contract."

"OLMSTED BROS."

The contract contained, *inter alia*, the following stipulation:

"This contract shall not take effect or be binding until said party of the second part has furnished to said party of the

first part a satisfactory bond in the sum of five thousand
dollars.''

The bond for five thousand dollars thus required was not
given, but each member of the firm of Edwards & Evans gave
a separate individual bond in the sum of twenty-five hundred
dollars.

On March 23, 1895, the surety for W. H. Edwards withdrew
and a new bond for twenty-five hundred dollars was furnishhed
with W. H. Edwards as principal and the defendant, H. W.
Albers, as surety.

The plaintiff claims that the firm of Edwards & Evans is
short in its accounts as agent aforesaid, and that the share of
said shortage that W. H. Edwards and his surety H. W. Albers,
must bear is $1,105.60, recovery of which sum, with interest,
is sought in this action.

It is clear that the contract of employment was entered into
between the firm of Olmsted Bros. styled therein, ''party of the
first part,'' and the firm of Edwards & Evans, styled ''party of
the second part,'' and that the firm of Olmsted Bros., with
the exception of the matter of separate bonds, never at any
time dealt with or recognized W. H. Edwards or John G. Evans
in any other character than as Edwards & Evans, a partnership.

It is undisputed that, when the surety, H. W. Albers, ex-
ecuted the bond he believed—and had no reason to believe other-
wise—that W. H. Edwards in his individual capacity was the
agent employed by Olmsted Bros., and that he had no knowl-
edge or notice whatever that the firm of Edwards & Evans was
the agent. Indeed, he had no knowledge that any such firm
existed. The bond is the individual obligation of W. H.
Edwards and contains no reference whatever to the firm of
Edwards & Evans or any other copartnership. With the pos-
sible exception of one clause which refers to ''joint solicitors
or agents,'' and which will presently be considered, there is
nothing in the bond to indicate that anyone was associated with
W. H. Edwards in the employment. The liability of the ob-

ligors is limited in terms to such business as passed through the agency of W. H. Edwards.

The clause in the bond above referred to as a possible exception is as follows:

"It is understood between said obligor and obligees that this bond shall continue and remain in force one year after date and shall cover all liabilities and delinquencies of said W. H. Edwards to said obligees, whether the same shall arise under his present appointment or under any future appointment or agreement whether as solicitor or agent or as joint solicitor or agent with any other person or persons, or by sub-agents appointed by said W. H. Edwards."

The above language to say the least, must have been ambiguous to one in the situation of the surety Albers when he signed the bond. The instrument was brought to him by some one acting in the interest of W. H. Edwards and, in the absence of information to the contrary and misled by the explicit language of the instrument limiting the obligation to W. II. Edwards individually and the liability to such business as passed through the agency of W. H. Edwards, he believed that no one other than Edwards was concerned. The clause "whether as solicitor or agent or as joint solicitor or agent with any other person or persons" may easily have been understood by Albers as referring to a possible "future appointment," which is sharply distinguished in the instrument from "his present appointment." Reading this language as the surety did with the understanding that the words "his present appointment" was an employment of Edwards as an individual, the words "joint solicitor or agent with any other person or persons," certainly does not convey the idea that Edwards was then a member of a partnership and that the expression "his present appointment" meant the employment of a firm of which Edwards was only a member. Just above this in this context, the liability had been pointedly limited to business which passed through the agency of W. H. Edwards—not of Edwards & Evans.

The expression, ''joint solicitor or agent with any other persons or persons,'' is not a description of one who is a member of a partnership firm. Employed in relation to one engaged as Edwards was in soliciting life insurance, where compensation consisted of commissions based upon the amount of business done and premiums collected, it seems rather to have been inserted in the bond to cover instances where more than one person was engaged in effectuating the insurance, and the commission had therefore to be divided. If the principal obligor was a member of a partnership firm and the surety was to be liable for him as such, why was it not so stated in plain and simple language?

Where a written instrument is drawn up by one of the contracting parties and furnished the other party, ready-made as it were, to be signed by the latter, ambiguous or doubtful language should be resolved against the party who thus selected it, and he should not be permitted to take advantage thereby of one misled by it. See 2 *Page on Contracts,* Section 1122.

This rule, it is true, is of limited use and only occasional value in construing contractual stipulations, but the circumstances shown in evidence in this case, in the opinion of the court, call for its application here. The bond here is upon a written form, provided by the obligee and the ambiguous language above quoted is found in the printed part of the instrument, and the form itself is one printed specially for the obligees, Olmsted Bros. and furnished by that firm for use by its employees.

Under these circumstances it is but reasonable to infer that the surety was led by the circumstances into believing that he was to be responsible for W. H. Edwards individually, in his ''present appointment,'' as it was designated in the instrument, and for any liabilities incurred by said Edwards ''under any future appointment or agreement whether as solicitor or agent or as joint solicitor or agent with any other persons or persons.'' Believing, as he did, that Edwards individually was then the

agent of the obligees, he could have understood the expression "joint solicitor or agent with any other person or persons" only as referring to the possible "future appointment" spoken of in the same sentence.

2.  The main question of law submitted to the court may be thus stated:

When a surety executes a bond for the faithful accounting by a named principal as agent of the obligee, wherein the latter is described as employed in his individual character as such agent, but as a matter of fact, unknown, however, to the surety, the principal is only a member of a partnership firm which is itself the agent of the obligee, and thereafter the firm fails to account for moneys collected by it as such agent, is the surety liable on such bond to the obligee?

If, as a matter of fact, the principal, Edwards, at the time of the execution of the bond, had been individually the agent of the obligee and thereafter had taken in a partner with the consent of the obligee but without the knowledge of the surety, the surety would have been discharged from any further liability on the bond.  In such event the only party that could become liable to the obligee as principal would have been the copartnership, and the surety had not undertaken any responsibility for the firm.  *Sewing Machine Co.,* v. *Brock,* 113 Mass., 194; *Insurance Co.* v. *Scott,* 81 Ky., 540; *Bell* v. *Norwood,* 7 La., 95; *Sewing Machine Co.* v. *Hines,* 61 Mich., 423; *London F. A. Corporation* v. *Bold,* 6 Q. B. 514.

It is decided in these cases that a bond given to secure an indebtedness contracted by an individual does not secure an indebtedness contracted by a partnership firm of which that individual is a member.  This is really the question that was before the court in this case.  In principle it is immaterial, in such case, whether the partnership existed at the time the bond was executed or whether it came into existence thereafter.  It was claimed, however, that although the surety, Albers, could not be held for the indebtedness of the firm of

Edwards & Evans, none the less he would be liable for such part of the firm's indebtedness as should be borne by Edwards. This claim, in the opinion of the court, arises from a mis-understanding of the legal characteristics of a partnership. Each member of this firm was responsible to Olmsted Bros. for the entire amount of the firm's indebtedness. It might be that in an accounting between the two partners, Edwards would be found to be indebted to his partner or *vice versa,* but by no manipulation or analysis of the business of the firm could the indebtedness of Edwards to Olmsted Bros. be made out to be anything other than the entire indebtedness of the firm. The instant that it is conceded that the surety for Edwards cannot be made responsible for the entire sum due Olmsted Bros. from Edwards & Evans, it necessarily results that he is not liable to the obligees on the bond at all. The bond secured any individual indebtedness arising between Olmsted Bros. and Edwards under the contract of employment, and nothing else. No such individual indebtedness ever arose or could arise under such contract, and the surety on the bond has nothing to answer for to the obligeee.

If it had appeared that the surety, when he executed the bond, was aware of the fact that his principal, Edwards, was only the agent of Olmsted Bros. in the sense that he was a member of a firm which was itself such agent, a different question would have been presented. It is admitted, however, that the surety believed Edwards individually was the agent.

There has been no accounting between the members of the firm of Edwards & Evans. The deposition of Hubert H. Ward was read on trial wherein it appeared that—according to that witness—Evans owed the plaintiffs a certain sum and Edwards owed another sum, and Edwards & Evans, the firm, owed still another sum—all under this contract of employment. How he made this out does not clearly appear, nor has he testified to anything which indicates what sort of transactions he considered firm business and what sort he deemed business of the

individual partners.   Even if it were law that a partner was not liable to a creditor for the entire firm debt but only for part of it, there is nothing in the testimony .in this case by which a court or jury can determine what part of this indebtedness should be charged to Edwards and what to Evans, and the plaintiff's case would have failed for want of evidence on this point.

For the reasons herein stated, the plaintiff's motion for a new trial will be overruled.