# Alabama Fuel & Iron Co. *v.* Alabama Fidelity & Casualty Co.

### Assumpsit.

(Decided June 30, 1916. Rehearing denied December 30, 1916. 73 South. 374.)

1. **Principal and Agent; Pleadings; Complaint.**—The complaint in this case examined, and held sufficient under § 5321, Code 1907, although it fails to state the quantity of the coal shipped to the agent, the dates on which it was shipped and the amount of the invoice.

2. **Same; Liability; Property Not Accounted for.**—Although the contract provided that the coal and the accounts of its sale should remain the property of the principal until settlement should be made, yet where it further stipulated that after the termination of the contract, and on the final settlement of the agent he should pay according to invoices rendered for all coal then on hand, and all amounts of any kind in arrears, the agent and the surety on his bond for the faithful performance of his agency, were liable for the invoice price of coal which he had received, and which remained unsold at the termination of his agency.

3. **Pleading; Demurrers; Ground.**—Where the action was on the bond of an agent for the faithful performance of his agency, an averment of a provision of the contract of employment as one of the conditions of the bond, the bond and the contract being exhibited with the count, is not ground for demurrer.

4. **Appeal and Error; Harmless Error; Pleading.**—Error in sustaining demurrer to one count, alleging a balance due at the termination of the contract of agency, at invoice prices for the coal shipped to the agent, is not rendered harmless by the fact that plaintiff had the benefit of the count alleging that plaintiff had shipped to the agent specific quantities of coal which remained on hand, and specific quantities which had been sold, and for which the agent had not accounted, since the burden was thereby placed on plaintiff of proving the amount of the sales by the agent.

5. **Same; Burden of Proof.**—The appellee has the burden to show that error did not prejudicially affect appellant's right.

APPEAL from Birmingham City Court.

Heard before Hon. A. H. ALSTON.

Assumpsit by the Alabama Fuel & Iron Company against the Alabama Fidelity & Casualty Company. Judgment for defendant and plaintiff appeals. Reversed and remanded.

PERCY, BENNERS & BURR, for appellant. JOHN R. TYSON, for appelle.

SAYRE, J.—We need not repeat the statement of this case to be found in the report of a former appeal. (190 Ala. 397, 67 South. 318). Questions are now raised other than the one to which our statement will be confined, but it would be of no profit to treat them, since in our judgment a reversal must be ordered for the court's error in sustaining the demurrer to amended count one of the complaint, and it is not probable that the other questions discussed in briefs of counsel will recur in their present shape.

Defendant bound itself to answer for "the faithful performance by Banks of all the provisions" of his contract with plaintiff. The condition alleged in the count under consideration was as follows:

"It is understood and agreed that this contract shall remain in force indefinitely, with the understanding that either party can at any time it desires terminate the same by giving 60 days' notice in writing; and upon such termination final settlement shall be made by the parties, and the party of the second part (Banks) shall pay the party of the first part (plaintiff) in accordance with invoices rendered for all coal that he then has on hand and shall make payment of all amounts of any kind in arrears."

The count avers that plaintiff had terminated the contract in accordance with its terms, "and that there was then due and unpaid, and remained due and unpaid, by the said Richard G. Banks, to plaintiff, under said contract, in accordance with invoices rendered, for all coal shipped him by plaintiff that the said Richard G. Banks then had on hand (which was, to wit, the amount of 75 tons) the sum of, to wit, $200 and for arrears for coal theretofore shipped said Banks under said contract by plaintiff (in, to wit, the amount of 2,000 tons) the further sum of, to wit, $4,267.19." It then avers in substance a demand for "said

sum of money so due it" and a breach on the part of defendants (Banks and the Fidelity Company) in that "they wholly refused and failed and still refuse and fail to pay plaintiff said sum of, to wit, $4,467.19." Both contracts were exhibited with the complaint and by reference made a part of the count.

(1) The language of this count, with reasonable perspicuity, we think, and so intelligibly as to present material issues of law and fact, expressed the idea that plaintiff had terminated its contract with Banks, as under its quoted terms plaintiff had the right to do, and sought to recover of defendants the sum of $4,467.19 due at invoice prices for coal shipped to Banks, of which sum $200 was due for 75 tons Banks had on hand at the termination of the contract, and the further sum of $4,267.19 which was at that time in arrears—meaning, according to the lexicographers, that such a sum was behind in payment, or remained unpaid, though due, and more especially that it was a balance remaining due though some part had been paid—for 2,000 other tons theretofore shipped by plaintiff to Banks under the contract between them. These averments constituted a substantial observance of the rule of pleading prescribed by the statute and our numerous adjudication on the subject.—Code, § 5321, and cases annotated thereunder. It is said in appellee's brief that the count should have alleged the quantity of coal shipped to Banks, the dates on which it was shipped, and the amounts of the invoices. As for these particular objections the count would have been sufficient had it merely alleged that defendants were indebted to plaintiff in the sum of $4,467.19 on account of coal shipped by plaintiff to Banks in accordance with the terms of the contract exhibited with the complaint. Otherwise it must have been necessary, as against the Fidelity Company, to assign a breach of the bond on every shipment or even ton of coal for which plaintiff had not received payment, or the complaint should have been made to serve all the purposes of a bill of particulars. Neither proposition can be maintained.

(2) Under the contract Banks acted as plaintiff's agent in handling and selling the coal shipped to him, and the Fidelity Company had underwritten his faithful performance of his agency. The contract provided that all sums of money collected by Banks over and above the invoice price and all accounts, meaning of course uncollected accounts, should be his commission or compensation for his services as agent. By its demurrer the

Fidelity Company insists that Banks was not in arrears unless he had sold the coal and collected the money for it, and that the count failed to state such a case. True, the contract also provided that the coal and the accounts should remain the property of plaintiff until settlement should be made; but it further stipulated that on or before the 20th of each month Banks should pay for all coal shipped to him before the 1st of the same month, and not only so, but that upon final settlement he should pay according to invoices rendered for all coal then on hand and make payment of all amounts of any kind in arrears. The meaning of the contract is reasonably clear to this effect, that upon termination of Banks' agency, he was to pay the invoice price of all coal then on hand and as well for coal previously received and sold by him for which plaintiff had not been paid, so that, as affecting Banks' liability to plaintiff, and the extent of the Fidelity Company's liability as surety, it was really a matter of no consequence whether Banks had sold any coal or, of he had, whether he had collected the money for it, for, in any case, he was accountable to plaintiff at invoice prices for all the coal received by him; and while plaintiff might have reclaimed any coal on hand after the termination of Banks' agency and any outstanding accounts for coal sold by him, still Banks had given plaintiff the option to follow the course indicated by this suit by agreeing to repeat again the language of the contract, that upon such termination and on final settlement he would pay plaintiff "in accordance with invoices rendered for all coal that he then had on hand and make payment of all amounts of any kind in arrears," and for his performance of this agreement the Fidelity Company had stood surety. We will add, though it may be so obvious as hardly to require statement, that if plaintiff had reclaimed any coal or accounts, defendants would be entitled to credit for their invoice price and face value.

The tenth ground of demurrer challenged the sufficiency of the count upon the ground that it joined two alleged breaches of the bond. This ground of the demurrer is not argued by appellee, and in connection with what has already been said we deem it sufficient at this point to note the fact that in this count only one breach of the bond was assigned, and that was the failure and refusal of the defendants to pay the sum claimed.

(3) Our attention has been drawn to the averment in this count that "one of the conditions of said *bond* [italics supplied]

[Alabama Fuel & Iron Co. v. Alabama Fidelity & Casualty Co.]

was as follows, to wit," upon which follows an extended quotation of that part of the *contract* between plaintiff and Banks in which it was stipulated that plaintiff might terminate the contract by notice whereupon a final settlement should be had and Banks would pay, etc.  In a certain manner of speaking, not wholly insensible, this stipulation was contained in the bond, for the bond expressly made the contract between plaintiff and Banks a part of itself; and if, as appellee suggests, proof of the bond would not have amounted to proof of the contract, to which the Fidelity Company was not a party at the time of its execution, that question would have arisen only on consideration of the sufficiency of the evidence to sustain a verdict for plaintiff, unless indeed the count, in the shape in which it was, after the indulgence of all intendments in its favor, wholly failed to state a cause of action; but that is not contended for; and, at most, probably this averment laid the count open only to the objection that it contained repugnant averments—a point not taken by the demurrer.  And anyhow this defect in the count does not appear to have been called to the attention of the trial court in any way, and when the averment is read in connection with the bond and contract exhibited with the count, it was so obviously a mere lapse of the pen that, in view of our statue on the subject of demurrers, we cannot attribute the ruling to this defect or allow it otherwise to operate on appeal to sustain the ruling in the court below.

It follows from what has been said that the court committed error in sustaining the demurrer to the first count of the complaint.

(4)  But appellee insists that this error cannot suffice to reverse the judgment for the reason, it is said, that appellant under counts 3 and 4 had the full benefit of the case made by count 1. We have been unable to bring our minds  to  that  conclusion. Plaintiff was driven by the ruling—or so conceived its effect— to amend its complaint by avering in count 3 that "at the time of said breach," meaning, as we think the count should be construed, June 20, 1912, or thereabouts, "plaintiff had shipped said Richard G. Banks coal under the terms of said contract, for which he was accountable to plaintiff at the invoice price thereof under said contract in the sum of, to wit, $4,467.19; and that said Banks had sold such coal, and, as above stated, he wholly failed and refused to account to plaintiff for the proceeds thereof,

or any part thereof." And in count 4 plaintiff alleged that "at said time," meaning in this count, very clearly, June 20, 1912, "said Richard G. Banks had on hand of such coal 75 tons thereof, of the price, according to the invoices rendered thereof, of, to wit, $200; and that he was further in arrears to plaintiff for coal shipped him under such contract to the extent of 2,000 tons which he had sold and failed to account for under the terms of said contract, the price of such coal under said contract being the sum of, to wit, $4,467.19." At any rate, plaintiff amended its complaint by the addition of counts 3 and 4, as stated, without adding any other count more nearly claiming the full measure of the damages alleged in count 1. Thus, by the ruling in question, was put upon plaintiff the burden of proving that by far the larger part of its claim was for coal that Banks had sold, and this, as we have seen, it was not necessary that plaintiff should prove. Defendant's insistence is that the bill of exceptions shows that all the coal shipped to Banks was received and sold by him. The bill of exceptions, which purports to contain the substance of all the evidence introduced on the trial, in some material particulars undertakes merely to state that it was not prepared or signed with a view to the contention, now presented, that possible error as to the ruling against count 1 did the plaintiff no harm. It shows without conflict shipments prior to June 20, 1912 (the date on which plaintiff terminated the contract by notice, and after which no coal was shipped) of 4,915.05 tons of coal worth at invoice prices "which varied from time to time" $12,322.46, and credits by payments, the last made on June 18, 1912, amounting to $7,855.27, leaving a balance due, on plaintiff's theory of the case, of $4,467.19, the amount claimed in the complaint. At one place the bill of exceptions states: "There was testimony going to show that the coal shipped to Banks by the plaintiff was received by Banks and sold through the Banks Coal Company, of which Banks was the general manager, and that the proceeds of the coal was deposited in the Fourth National Bank of the city of Montgomery to the credit of the Banks Coal Company and was subject to checks drawn by that company."

This was probably intended merely as a statement of the manner in which Banks conducted the sales and used the proceeds of the coal sold by him. But however that may be, further along is this statement:

"The testimony further showed that beginning with October 1911, and ending with October, 1912, there was sold of the coal

shipped Banks by plaintiff coal to the amount of $24,946.86, part being sold for cash and part on credit, but prior to November, 1912, there had been collected in cash $24,946.86 for such coal as follows."

And here follows a statement of the amount of sales for cash and on credit during each month of the period stated, including October, 1912. This statement shows sales amounting probably to more than $2,000, certainly to more than $1,600, made after the 20th of June, the date on which the status of the Fidelity Company's accountability became fixed by plaintiff's notice terminating the contract, and the date, also, before which counts 3 and 4 alleged that sales had been made by Banks.

(5) Upon appellee rests the burden of showing that the error in the ruling against count 1 did not prejudicially affect plaintiff's case. Conceding the propriety of investigation of the case shown by the bill of exceptions for the purpose indicated—about which there may be doubt in the circumstances, the court having given the affirmative charge for the Fidelity Company—it appears affirmatively, we think, that plaintiff under the averments of counts 3 and 4 could not have had the full benefit of the case stated in count 1, even though the jury had been allowed to consider a verdict against the company. It results that the judgment must be reversed.

Reversed and remanded.

ANDERSON, C. J. and MCCELLAN and GARDNER, JJ., concur.