R. JAMES MORRISON and Another v. CHARLES T. ARONS and Others.[1]

65 321
f83 391
54LRA 946

June 29, 1896.

Nos. 9923—(173).

Contract of Employment—Construction—Compensation of Employé.

That part of a contract under which one of the defendants entered into the employ of plaintiffs as a general manager, salesman, and collector, whereby the time and manner of ascertaining and determining the amount of the employé's compensation,—a share of the profits of the business,—construed. *Held* that, although there was to be an ascertainment each month, this was only provisional, and subject to revision and accurate determination when the relations between the employers and employé were finally determined.

Bond for Faithful Performance—Variation from Contract—Release of Sureties.

In an action on a bond given by the employé, with sureties, to his employers, conditioned for the faithful performance of his duties, and particularly for a repayment of all moneys withdrawn by him in excess of his share of the profits, it is *held* that the contract of suretyship was altered by a variation or departure from the essential terms of the employment agreement, and that the sureties were thereby released from their obligation.

Action in the district court for Ramsey county. The case was tried before Kelly, J., who ordered judgment against defendant Arons for $801.43, and against defendants Williams and Hall for $559.50, with interest. From an order denying a motion for a new trial defendants Williams and Hall appealed. Reversed.

*Fred N. Dickson*, for appellants.

*Frank A. Hutson* and *Warner, Richardson & Lawrence*, for respondents.

COLLINS, J. Plaintiffs entered into business as co-partners, and employed defendant Arons as general manager, salesman, and collector. According to the written contract, the employment was to continue as long as mutually agreeable. Arons was to receive as compensation for his services a sum equal to one-half the net profits of the business, and these profits were to be ascertained as follows:

"During the existence of the employment of said party of the second part, once each month, commencing with December 1, 1892, a

[1] Reported in 68 N. W. 33.

65 M.—21

just and true inventory of the assets and liabilities of said firm shall be taken, and all accounts which are considered bad shall be charged to profit and loss, and from the residue of the accounts due said firm shall be deducted five per cent. of the aggregate amount thereof as a reserve to cover bad debts, and the excess of the assets over the liabilities and the capital stock of said firm shall be determined and agreed upon as the net profits of said business, and a sum equal to one-half of such excess shall then and there be credited to said party of the second part as and for his compensation, and be considered an expense of said business. That when the relation between said firm and said party of the second part is extinguished, then the actual amount of profit or loss, as the case may be, of the business of said firm, shall be determined, and, if there has been a net profit, a sum equal to one-half thereof shall be allowed said party of the second part, and any errors in estimating the net profits at the previous stated periods shall then and there be rectified, and, if said party of the second part shall have withdrawn more money from said firm than he is entitled to, he shall then and there forthwith repay the same; and, if there is any amount due him on account of his compensation, it shall then and there forthwith be paid him."

Arons, as principal, and defendants Williams and Hall, as sureties, entered into a bond, in which plaintiffs were obligees, which, after reciting that Arons was about to enter plaintiffs' employ as general manager, salesman, and collector, provided, and was conditioned, that:

"If the said Charles T. Arons shall faithfully and honestly perform all of the duties of his said employment, and shall keep just and true accounts of all moneys received and expended and all property bought and sold for or on account of said firm by him or under his direction, and shall faithfully and fully, and as often as required, account for and pay over to said firm any and all moneys belonging thereto collected or received by him, or which in any manner come into his hands in the course of his employment by said firm; and shall forthwith and on demand repay to said firm any and all moneys he shall have withdrawn therefrom for his own use in excess of the compensation due him for his services under the terms of his agreement with said firm in that behalf (whether such moneys shall have been so withdrawn with the consent of said firm or otherwise), as often as it shall be determined that such overdraft has been made, then the above obligation to be void; otherwise to remain in full force and virtue."

This action was brought to recover an amount of money said to be due on the bond, and the trial was by the court. No evidence was introduced tending to show any other settlement or accounting than

that had when Arons' term of employment ended. In fact plaintiffs admitted that they never ascertained, and could not, at the time of the trial, ascertain, what the respective monthly profits of the business had been. At the conclusion of the plaintiffs' case and again at the conclusion of the entire case, the defendant sureties moved the court to dismiss the same as to them upon the ground that, as it affirmatively appeared from the evidence and admissions that no monthly settlements or accounting had been had as provided for in the contract of employment, the sureties upon the bond had been released from liability. These motions were denied, and the court made its findings of fact and conclusions of law ordering judgment in plaintiffs' favor.

The court found the allegation in the complaint that no settlement or accounting was had between the parties until after Arons' employment ceased, to be true. We agree with the court below in its construction of the contract, but we cannot concur in its holding that the sureties were not discharged by the failure and omission to have monthly accountings and settlements between Arons and plaintiffs. The former was to have advanced to him $100 each month for personal expenses and on account of his compensation under an agreement that, if this amount, with other sums of money which came into his possession, exceeded one-half of the net profits of the business, the excess should be promptly refunded. What the profits were, and the sum due to plaintiffs, if anything, were to be provisionally ascertained each month; and, had this been done, it is quite certain that plaintiffs would have discovered before the expiration of 13 months that the business was not profitable, while Arons would have learned that he was far from earning a living out of it. The natural result would have been for both parties to terminate their contract relation, and avoid further loss. It is evident that there would be much less hesitation on the part of a person called upon to become a surety upon a bond given for the faithful performance of a contract with such conditions than if the real situation was not to be ascertained for months. The condition in the employment contract whereby monthly accountings and settlements were agreed upon was an exceedingly beneficial one for all concerned. It was an essential feature of the contract whereby Arons agreed to conduct plaintiffs' business enterprise for an indefinite period of time, his compen-

sation to be determined by the net profits. The contract of surety-ship was departed from and varied when this provision was wholly disregarded, and the case is brought directly within the rule that, if an essential condition of such a contract is not complied with, a surety is not bound. A new trial must be had.

Order reversed.