WILLIAMS et al. v. LYMAN.

(Circuit Court of Appeals. Eighth Circuit. June 20, 1898.)

No. 1,034.

1. PRINCIPAL AND SURETY—OFFICIAL BONDS—NEGLIGENCE OF OBLIGEE.

Neither the negligence nor failure of an obligee in an official bond, in the discharge of some duty to a third party, nor his negligence or laches in enforcing a compliance with its condition, will release the sureties. Nothing less than the breach of a covenant which the obligee has made, or connivance at the principal's breach of the bond, or knowledge of such breach, and a continuance of his employment without communicating the fact to his sureties, or such a willful shutting of the eyes to the evidences of the breach as warrants the inference of connivance, will have that effect.

2. SAME.

> Mere neglect of an internal revenue collector to comply with the laws and regulations requiring him to frequently examine and verify the accounts of his deputy, and see that he faithfully discharges his duty, will not release the sureties on the deputy's official bond from liability for defalcations, which a strict performance of these duties might have prevented.

In Error to the Circuit Court of the United States for the District of Utah.

This was an action at law by Ambrose W. Lyman against P. L. Williams, George Cullins, and Sidney W. Darke, as sureties on the official bond of Richard H. Cabell, as a deputy internal revenue collector. There was a verdict for plaintiff in the court below, and judgment was entered thereon, to review which the defendants sued out this writ of error.

E. B. Critchlow and George Sutherland, for plaintiffs in error.

Franklin S. Richards, for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and SHIRAS, District Judge.

SANBORN, Circuit Judge. This case presents but a single question, and it is this: Is negligence or laches by an obligee in the discharge of his duties to a third person, or in the enforcement of his claims against the principal in a bond, a release of the obligation of the sureties thereon? This question arises in this way: On January 24, 1894, Ambrose W. Lyman, the defendant in error, was the United States internal revenue collector for the district of Montana. He appointed one Richard H. Cabell one of his deputies, and on that day Cabell as principal, and the plaintiffs in error as sureties, executed a bond to the defendant in error conditioned for the faithful discharge of his duties by Cabell. Between the date of that bond and February 23, 1897, Cabell misappropriated moneys of the United States which came into his hands as deputy collector to the amount of about $8,000. Lyman, the obligee in the bond, brought this action to recover his loss on account of this defalcation. The plaintiffs in error answered, and the case was tried by a jury, which returned a verdict in favor of the defendant in error.

The only error of which complaint is made is that the court below struck out the sixth paragraph of the answer, with leave to the plaintiffs in error to amend it by adding allegations of fraud and connivance. This paragraph pleaded two defenses. The first was that, under the laws of the United States and the rules made by the secretary of the treasury and the commissioner of internal revenue thereunder, it was the duty of the defendant in error to frequently and personally examine and verify the accounts of Cabell, to diligently and carefully supervise his discharge of the duties of his office, and to see that he faithfully performed them; that the defendant in error entirely neglected to do these things; and that the misappropriation and defalcation of Cabell would not have occurred if Lyman had faithfully and diligently discharged his duties. The second defense was that the defendant in error knew of the misappropriations of Cabell

while they were in progress, but failed to notify the sureties thereof, and was guilty of neglect so gross and inexcusable that it operated as a fraud upon them. The latter defense is not before us for consideration, because the plaintiffs in error so amended their answer after the sixth paragraph was stricken out that they were permitted to introduce evidence upon the trial in support of this defense, and the court charged the jury that, if the defendant in error had any notice or knowledge of the defalcation of Cabell, it was his duty to immediately discharge him, or to communicate the fact to his sureties as soon as he heard it, and that, if he failed to do so, he could not recover on the bond, although mere inattention or negligence on his part, without knowledge, would not defeat the action. The only question, therefore, for our consideration, is whether or not the negligence of Lyman released the sureties.

It is earnestly contended that since the laws and regulations under which the commissioner and his deputy were acting required the former to diligently supervise and inspect the accounts and acts of the latter, and since such a supervision and inspection would have brought the latter's defalcations to light and might have prevented the larger part of them, the sureties on his bond had a right to rely upon the faithful discharge of these duties by this collector, and that they ought not to be compelled to pay for losses that probably would not have been sustained if the obligee in their bond had been diligent and faithful. It may be conceded that if this collector, in consideration of the execution of the bond, had covenanted with these sureties that he would diligently supervise and inspect the acts and accounts, and compel the faithful discharge of the duties imposed upon his deputy, and had then made a breach of his agreement, the sureties would have been released from their obligation. This proposition rests upon the rule that a breach of a contract by one of the parties to it releases the other from further performance. It may be conceded, also, that sureties for a deputy or a servant are released from liability for subsequent delinquencies if the employer connives at his defalcations, or if he becomes aware of them, and permits his deputy or servant to continue in his employment, without communicating his knowledge to the sureties. The reason is that the duty to act in good faith towards those in contract relations with them rests upon all men, and a concealment of such defalcations, a failure to notify the sureties of them as soon as discovered, or to immediately discharge the defaulter, or a connivance at them, is both a violation of that duty and a fraud upon the sureties. Phillips v. Foxall, L. R. 7 Q. B. 666; Burgess v. Eve, L. R. 13 Eq. 450, 458; Gradle v. Hoffman, 105 Ill. 147, 155. Perhaps a willful shutting of the eyes to evidences of fraud, dishonesty, or embezzlement on the part of the servant—a negligence so gross as to warrant the inference of connivance—might have the same effect, because such willful ignorance would work a like fraud on the sureties. But there must be some violation of a covenant with, or some breach of a duty to, the sureties to work a release of their obligation. Was there anything of this character in the failure of the collector to supervise and inspect the acts and accounts and to diligently enforce the discharge of the duties of his

deputy, as required by the acts of congress and the regulations of the treasury department? He made no agreement with these sureties that he would comply with these laws and regulations. The laws were not enacted nor were the regulations adopted in the interest, or for the benefit, of these sureties. The acts of congress were passed, and the rules of the treasury department were established, for the benefit and protection of the United States, and for their benefit and protection alone. The plaintiffs in error cannot, therefore, base any cause of action or defense upon these laws and regulations alone, because Lyman owed the duty of obedience to them to the United States only, and they alone could recover damages for the breach of that duty. The failure to discharge a duty to the complaining party, and resulting injury to him, are indispensable elements of an action or defense on the ground of negligence. Reynolds v. Railway Co., 32 U. S. App. 577, 586, 16 C. C. A. 435, 440, and 69 Fed. 808.

Lyman, then, owed no duty to the sureties by virtue of the laws and regulations. Did the execution of the bond impose any duty upon him to comply with these laws and regulations for the benefit of the plaintiffs in error? They were in force when the bond was executed. They required regular, prompt, and correct accounts and vouchers, the careful preservation and prompt payment of the moneys of the government to the collector, and the faithful discharge of all his duties from the deputy, Cabell, as much as they called for supervision, inspection, and diligence by the collector, Lyman. If Cabell had complied with the laws and regulations, no negligence of Lyman—no failure on his part to discharge his duties—could have entailed any loss upon the sureties. When this bond was made, these sureties came to Lyman, and said, in effect, "If you will appoint Cabell your deputy, we will guaranty that he will comply with the laws and regulations which govern that office, and that he will faithfully discharge its duties." Lyman appointed him, and in consideration of that appointment these sureties gave the guaranty,—they executed this bond. Cabell failed to fulfill the guaranty; he broke the condition of the bond. The contract which his sureties made with the collector was that they would see that his deputy, Cabell, faithfully discharged his duties. They failed to do this. Is it any defense to an action on this contract that the collector or any other party failed to do the very thing which these sureties had agreed to do for them? Is it any defense to such an action that the collector was negligent in the discharge of a duty which he owed to the government, and that, if he had faithfully and carefully discharged that duty, the failure of these sureties to perform their contract—their failure to see that this deputy discharged his duties—would have caused them less loss? These questions must be answered in the negative. The contract was not that these sureties would guaranty the faithful discharge of the duties of this deputy if the collector supervised, inspected, and enforced his performance of them, or if he faithfully discharged his duties to the government or to any other third party. The bond contained no such conditions. Its purpose and effect were rather to relieve the collector of care concerning Cabell's actions and to cast that burden upon his sureties. The con-

tract of suretyship is not that the obligee will see that the principal performs its condition, but it is that the surety will see that he performs it. Nelson v. Bank, 32 U. S. App. 554, 571, 16 C. C. A. 425, 435, and 69 Fed. 798. If the principal fails, and loss ensues, the laches or negligence of the obligee constitutes no defense for the surety, because by his contract he takes upon himself the primary duty of watchfulness and care. If the deputy in this case was late in the presentation of his accounts, and lax in the discharge of his duties, and if care and diligence would have discovered the beginning of his misappropriations and would have prevented his subsequent delinquencies, the burden was on those who guarantied his acts to exercise that care, to discover those defalcations, and to demand his removal. If they failed to be careful, if they failed to discover the misappropriations, and to demand the removal of their principal until after loss had resulted from his defalcations. their contract was that they would pay that loss. Neither the negligence nor failure of an obligee in a bond in the discharge of some duty to a third party, nor his negligence or laches in enforcing a compliance with its condition, will release the sureties from their obligation. Nothing less than the breach of a covenant which the obligee has made, or connivance at the principal's breach of the condition of the bond, or knowledge of such breach, and a continuance of his employment without communicating the fact to his sureties, or such a willful shutting of the eyes to the evidences of the breach as warrants the inference of connivance, will have that effect. Mactaggart v. Watson, 3 Clark & F. 533; U. S. v. Kirkpatrick, 9 Wheat. 720, 735; Tapley v. Martin, 116 Mass. 275; Board v. Otis, 62 N. Y. 88, 92; U. S. v. Witten, 143 U. S. 76, 79, 12 Sup. Ct. 372; Water Co. v. Parker (Cal.) 35 Pac. 1048, 1051; Bostwick v. Van Voorhis, 91 N. Y. 353, 361; Pacific Fire Ins. Co. of New York v. Pacific Surety Co. of California (Cal.) 28 Pac. 842; Bank v. Brownell, 9 R. I. 168. The judgment below is affirmed.