FIDELITY MUTUAL LIFE ASSOCIATION v. JOHN F. DEWEY
and Others.[1]

June 7, 1901.

Nos. 12,547—(118).

**Bond—Weekly Reports—Release of Surety.**

In an action on a bond given by an agent to his principal, conditioned for a faithful performance of his duties, it appeared that by the terms of the agency contract, to secure the faithful performance of which the bond was given, the agent was required to make weekly reports to his principal of the business transacted by him; that the principal, without the knowledge or consent of the sureties, permitted the agent to continue in its employ, and to transact its business under the agency, without requiring him to make such weekly reports; and it is *held* that the failure to require the agent to make the reports and permitting him to continue to transact its business under the contract in violation of the terms thereof in this respect, constituted a material departure from the contract, and released and discharged the sureties from liability on the bond. Morrison v. Arons, 65 Minn. 321, followed.

Action in the district court for St. Louis county to recover $2,000 upon a surety bond. The sureties, defendants S. W. Eckman and F. N. La Salle, alone appeared and answered. The case was tried before Dibell, J., who directed a verdict in favor of de-

[1] Reported in 86 N. W. 423.

fendants. From a judgment entered pursuant to the verdict, plaintiff appealed. Affirmed.

*Mahon & Agatin*, for appellant.

*Searle & Spencer* and *John G. Williams*, for respondents.

BROWN, J.

In 1896, plaintiff, a Pennsylvania insurance corporation, with its head office in Philadelphia, constituted and appointed defendant Dewey agent for the transaction of certain of its business in thirty-seven counties of this state. As such agent, Dewey had the general management and charge of its business in the matter of soliciting and procuring insurance risks, delivering policies, collecting premiums, and remitting and paying the same over to the company. To secure the faithful performance of his duties as such agent, Dewey executed and delivered to plaintiff a bond in due form of law, with the other defendants as sureties. The agent defaulted in the performance of his duties, failed to remit moneys collected by him, and this action was brought against him and his sureties upon the bond to recover the amount of his delinquency. Defendants had judgment in the court below, and plaintiff appealed.

It is claimed by the sureties in defense that they were released and discharged from liability on the bond because and for the reasons: (1) That plaintiff, without their knowledge or consent, modified and changed Dewey's agency contract by extending and enlarging his territory, thereby creating additional duties and responsibilities which were not contemplated by the parties when the bond was executed, and which constituted a material departure from the original agreement; (2) that Dewey was permitted by plaintiff, without the knowledge or consent of the sureties, to continue to transact the business of the company without being required to make remittances of money collected, and without being required to make weekly statements of business transacted by him, as provided by the terms of the contract; and (3) that the sureties were released and discharged because the company permitted Dewey to retain money collected, which, under the terms of the contract, he was required promptly to remit. It is unnec-

essary to go into a discussion or consideration of the first and third of these defenses. The evidence fully sustains the second, and, as this disposes of the case adversely to plaintiff, we need consider no other question.

The terms of the contract between plaintiff and the agent, for the faithful performance of which the bond was given, so far as pertinent to the second defense, are as follows:

"It is expressly agreed and understood that the said second party [Dewey] shall receive as a special trust the net or gross premiums, as the case may be, due the association, and shall remit to the said first party [insurance company] at the beginning of every week the proceeds of premiums collected during the preceding week, and the said second party shall also at the same time make and forward a detailed statement of the collections made during the preceding week, showing the policies delivered, the collections made thereon, policies in hand not delivered, reasons for non-delivery, and policies in the hands of subagents."

The contention is that plaintiff permitted Dewey to continue in its employ as its agent without requiring of him the remittance of money collected, or the weekly reports provided for by the terms of the contract, without the consent of the sureties, and that, in consequence of which, the defendants were released and discharged from all liability upon the bond.

Our conclusion, from a careful examination of the evidence, is that the case of Morrison v. Arons, 65 Minn. 321, 68 N. W. 33, is decisive of the case. In that action it appeared that one Arons was employed as a traveling salesman under a contract by the terms of which it was provided that there should be monthly settlements between the agent and his employer, and for the faithful performance of his duties Arons executed and delivered the bond upon which the action was brought. Instead of requiring of the agent monthly settlements, as provided by the terms of his agency contract, he was permitted by his employer to make such settlements and such reports of his doings as agent at such times as his inclination prompted. The court there held at page 323:

"We agree with the court below in its construction of the contract, but we cannot concur in its holding that the sureties were

not discharged by the failure and omission to have monthly accountings and settlements between Arons and plaintiffs.  *   *   * Had this been done, it is quite certain that plaintiffs would have discovered before the expiration of thirteen months that the business was not profitable, while Arons would have learned that he was far from earning a living out of it. The natural result would have been for both parties to terminate their contract relation, and avoid further loss. It is evident that there would be much less hesitation on the part of a person called upon to become a surety upon a bond given for the faithful performance of a contract with such conditions than if the real situation was not to be ascertained for months. The condition in the employment contract, whereby monthly accountings and settlements were agreed upon, was an exceedingly beneficial one for all concerned. It was an essential feature of the contract, whereby Arons agreed to conduct plaintiff's business enterprise for an indefinite period of time.  *   *   * The contract of suretyship was departed from and varied when this provision was wholly disregarded, and the case is brought directly within the rule that, if an essential condition of such a contract is not complied with, a surety is not bound."

No distinction can be made between the two cases. In the case at bar, as in that case, the terms of the agency contract required the agent to make stated reports of transactions had by him, and in each case he was permitted by his employer to wholly fail to comply with the terms of his contract in that respect. The evidence in the case in hand, though perhaps not as specific as might have been, is reasonably clear and conclusive that Dewey made no reports of his doings as plaintiff's agent at all, and wholly failed to comply with the terms of his contract in that regard. The testimony of plaintiff's comptroller, taken by deposition at Philadelphia, and offered in evidence on the trial, is to the effect that Dewey never made any reports to the company, and that the company never required him to do so. It is true that he also testified that reports were made by the company's cashier, who received his information from Dewey; but that Dewey never made any reports, in writing or otherwise, direct to the company, is conceded by him. He testified further that no other officer of the company had any more information on the subject than he possessed. The testimony of the local cashier at the company's Minneapolis office, who claims to have acted in a dual capacity as cashier of the com-

pany and clerk or agent for Dewey at the same time, though the evidence is clear that he was the agent and representative of the company, is to the effect that Dewey never made any weekly reports to him, and was never required to make any. He did state that Dewey made some verbal reports whenever he had matters on hand to report, but did not explain how he knew that the reports were made when the agent had material on hand for that purpose. There is no other evidence on this subject, and, although the cashier may have made reports to the company of the business of the agency, such reports were not the ones required or contemplated by the terms of Dewey's contract.

The contract expressly required the agent to make detailed reports, and the terms thereof in this respect could not be complied with by reports made by another, under no responsibility, and bearing no relation to the contract with the sureties. Plaintiff was bound, in so far as the sureties were concerned, to require the agent to keep and perform the contract, and the sureties had the undoubted right to insist upon its faithful and strict observance. The consequences of a departure from the terms of the contract in this particular cannot be avoided by showing that another agent endeavored to perform the duties required of Dewey. Therefore the act of the company in continuing the agent in its employ without insisting upon the performance of the terms of the contract was a material departure therefrom, and one affecting the substantial rights of the sureties.

It may be stated, as a general rule, that dealings between the principal and agent, which amount to a departure from the contract by which a surety is bound, and which, by any possibility, might materially vary or enlarge the surety's liability, operate to discharge him; and it is no answer to say that he was not in fact prejudiced. Brandt, Sur. § 345; General v. Rolt, 6 C. B. (N. S.) 550; Calvert v. London, 2 Keen, 638; Bragg v. Shain, 49 Cal. 131. In line with this general rule, it was held in Lancashire Ins. Co. v. Callahan, 68 Minn. 277, 71 N. W. 261, that, where there is a continuing suretyship for the faithful discharge of his duties by a servant, if the master discovers dishonesty in the servant, and continues him in his service thereafter, without the consent of the surety,

express or implied, the latter is not liable for any losses arising from such dishonesty. Although there is no evidence in this case that plaintiff knew of Dewey's dishonesty, or continued him in its employ after acquiring any such knowledge, it is very certain and clear that such dishonesty might have been discovered had he been required to make reports as required by the terms of his contract. The sureties had the undoubted right to insist that the provisions of the contract be fully complied with in this respect, and, plaintiff having, without their knowledge or consent, acquiesced in the violation and breach thereof, they were released and discharged from all liability on the bond, and the court below properly ordered judgment in their favor. As this finally disposes of the case adversely to the plaintiff, it is not necessary to consider any of the other questions argued.

Judgment affirmed.