[Alabama Fidelity & Casualty Co. v. Alabama Fuel & Iron Co.]

# Alabama Fidelity & Casualty Co. *v.* Alabama Fuel & Iron Co.

## *Assumpsit.*

(Decided November 7, 1914.   Rehearing denied December 17, 1914.
67 South. 318.)

1. *Principal and Surety; Contract; Material Provision; Extent of Liability.*—Where the agency contract required the agent for the sale of coal to render monthly statements and pay over the amount shown thereby to be due, the performance of which was secured by the surety bond, such a provision is material, and a change in the same would affect the obligation of the surety upon its bond.

2. *Same; Discharge of Surety; Change in Obligation.*—Where a coal company relieved its agent from the obligation imposed by his contract to make monthly statements of and payments for the coal sold by him, it thereby discharged the surety.

3. *Same.*—A mere indulgence by an employer to his agent, or the extension of time to make good his default, does not discharge the surety.

4. *Same; Subsequent Misconduct.*—Where an employer discovers dishonesty of his employee and fails to give notice thereof to the surety on his bond, the surety is not liable for a subsequent default.

5. *Same; Waiver.*—The parties to a contract, the execution of which is secured by a surety bond, cannot waive provisions of the contract so as to affect the surety's interest without his consent.

APPEAL from Birmingham City Court.

Heard before Hon. JOHN C. PUGH.

Action by the Alabama Fuel & Iron Company against the Alabama Fidelity & Casualty Company and another. Judgment for plaintiff, and defendant Alabama Fidelity & Casualty Company appeals. Reversed and remanded.

The following is the contract between Banks and the fuel and iron company:

This contract and agreement, made and entered into on this the 4th day of October, 1911, by and between the Alabama Fuel & Iron Company, a corporation, party of the first part, and R. G. Banks, party of the

second part, witnesseth: That the party of the first part agrees to allow the party of the second part to handle its coal in the city of Montgomery, Alabama, and the party of the second part agrees to handle such coal, upon the following terms and conditions: (1) The party of the first part agrees to ship coal in car load lots, consigned to the party of the second part, as its agent in the city of Montgomery, Ala., in such quantities as is warranted by the trade in said city, and as the output of its mines and its ability to secure cars from the railroad company justifies. (2) The party of the second part agrees to use his best efforts to the end of selling as much of the coal of the party of the first part as he can, and to account as the agent of the party of the first part, both in selling such coal and in accounting therefor, and in accounting for the proceeds thereof. Each shipment of coal made by the party of the first part shall be accompanied with an invoice; and it is understood and agreed that the party of the second part shall not sell any of said coal at a price less than the price as shown on said invoice, plus freight and reasonable cost of handling after the arrival in Montgomery, except that small portion, not to exceed 10 per cent. of said coal, which, through process of handling, has become too small in size to be classed as nut or lump coal, which said party of the second part has, necessarily, to sell at a reduced price. He is to keep an accurate account showing the amount of coal sold, to whom sold, the price paid therefor, and the sum collected thereon; and, is to render monthly statements on or before the 5th day of each month, showing the amount of such sales, and paying the party of the first part, on or before the 20th of each month, for all coal shipped to the party of the second part up to the first day of that same month, except in such cases as

may be covered by special agreement in writing between said parties. All sums of money which he collects over and above said sum per ton and all accounts to be his commission or compensation for acting as agent of the party of the first part in selling such coal. (3) It is further understood and agreed that all coal of the party of the first part which is placed in the yards of the party of the second part shall be kept separate from any coal belonging to the party of the second part, to any other person, firm or corporation; and that such coal so kept separate shall be marked by board or other designation showing that it is coal of the party of the first part. (4) It is distinctly understood and agreed that the party of the second part has no interest of any kind in and to the coal which he agrees to handle for the party of the first part, except such amount as he collects for each ton of coal over and above the amount at which said coal was invoiced by the party of the first part to the party of the second part; and that the coal, the proceeds and accounts are and shall remain the property of the party of the first part until settlement is made with the party of the first part; and the party of the second part agrees and binds himself to hold such coal and such proceeds, and such accounts as the property of and in trust for, and as the agent of the party of the first part. (5) It is further agreed and understood that the party of the first part at any time may call for a stock of its coal on hand to be taken, and can call for a settlement between the amount of coal then on hand and the amount of coal which had been shipped to the party of the second part; and in making such settlement the railroad weights at mines shall govern and be considered conclusive. Nor shall such settlement on the difference between the stock on hand and the coal shipped be waived by reason of

[Alabama Fidelity & Casualty Co. v. Alabama Fuel & Iron Co.]

the fact that previous settlements have been made upon the books and records of the party of the second part without taking stock of the coal in hand; it being understood that the settlements herein called for are not conclusive, but are subject to correction by the taking of stock as herein provided for; and that it is the understanding between the parties that the party of the second part shall account for each shipment of coal made to him in accordance with the invoice price. (6) It is understood and agreed that this contract shall remain in force indefinitely with the understanding that either party can at any time it desires terminate the same by giving 60 days' notice in writing and upon such termination, final settlement shall be made between the parties, and the party of the second part shall pay the party of the first part, in accordance with invoices rendered, for all coal that he then has on hand, and shall make payment of all amounts of any kind in arrears. (7) It is further understood and agreed that the party of the second part shall have no authority of any kind to incur any debts for which the party of the first part shall be responsible, and that his authority is limited solely to the handling of its coal in the manner and upon the terms herein set forth. (8) It is further understood and agreed that the party of the first part shall not be responsible for the costs of handling this coal, of advertising, freight, clerk hire, or debts of any other kind or character incurred by the party of the second part; it being the intention of this contract that the party of the first part is to receive from the party of the second part the minimum price herein set forth for each ton of coal which it ships to the party of the second part as its agent, and that all other charges and expenses are to be borne by the party of the second part. (9) It is further un-

derstood and agreed that the party of the second part shall execute a surety bond in the sum of $7,500 to insure the faithful compliance on his part with the provisions of this contract. In witness whereof the parties hereto have caused this contract and agreement to be executed, on this the day and year above written. Alabama Fuel & Iron Company, by Chas F. De Bardeleben, Vice President. R. G. Banks.

The following is the contract of guaranty: Know all men by these presents, that we, Richard G. Banks, as principal, and Alabama Fidelity & Casualty Company, as surety, are held and firmly bound unto the said Alabama Fuel & Iron Company, a corporation, in the just and full sum of seven thousand five hundred dollars, for the payment of which, well and truly to be made, we bind ourselves, jointly and severally, and our heirs, executors, administrators, successors, and assigns, by these presents, and as against the liability hereof, the principal waives all right which he may have to claim either real or personal property as exempt to him under the laws of Alabama. The condition of the above obligation is such that whereas, the above-bound Richard G. Banks has entered into a contract with the said Alabama Fuel & Iron Company, of date the 4th day of October, 1911, copy of which is attached to and made a part of this bond, in which the said Alabama Fuel & Iron Company agrees to allow said Richard G. Banks to handle its coal in the city of Montgomery, Ala., upon certain terms and conditions, which are specifically set forth in said contract. Now, therefore, if the said Richard G. Banks shall faithfully comply with all of the provisions of said contract required of him to be performed during the term of this bond, to wit, one year from the date hereof, then this obligation to be void; otherwise to remain in full force and effect. In witness

whereof, the said Richard G. Banks has hereunto set his hand and seal, and the said Alabama Fidelity & Casualty Company has caused this instrument to be executed in its name, and its corporate seal hereto affixed, by Frank N. Julian, its general manager, and J. W. Kelly, its secretary, who are duly authorized so to act, on this the 11th day of October, 1911.

JOHN R. TYSON, for appellant.

PERCY, BENNERS & BURR, for appellee.

DE GRAFFENRIED, J.—R. G. Banks made a contract with the Alabama Fuel & Iron Company, whereby he undertook to handle coal for said fuel and iron company in the city of Montgomery. The contract between the parties was reduced to writing. A copy of it appears on pages, 3, 4, and 5, of the transcript, and the reporter will set it out.

The performance of the contract by Banks with said Alabama Fuel & Iron Company was guaranteed by the Alabama Fidelity & Casualty Company. A copy of the contract of guaranty is set out on pages 5 and 6 of the transcript, and the reporter will also set out a copy of this contract.

(1) 1. An examination of the contract made by Banks with the fuel and iron company will show that Banks agreed to pay for all coal shipped to him by the fuel and iron company, at the invoice price, and an examination of the contract of guaranty will show that the fidelity and casualty company bound itself "to the faithful performance by Banks of all the provisions" of his said contract. By its contract the fidelity and casualty company became the surety of Banks, with its liability limited to $7,500.—*Saint v. Wheeler,*

& *Wilson Mfg. Co.,* 95 Ala. 362, 10 South. 539, 36 Am. St. Rep. 210.

A further examination of the contract will show that among the terms of the contract which was made by the plaintiff with Banks was the following: "He is to keep an accurate account showing the amount of coal sold, to whom sold, the price paid therefor, and the sum collected thereon; and is to render monthly statements on or before the 5th day of each month, showing the amount of such sales, and paying the party of the first part, on or before the 20th of each month, for all coal shipped to the party of the second part up to the first day of that same month, except in such cases as may be covered by special agreement in writing between said parties."

The above-quoted excerpt from the contract made by Banks with the plaintiff—especially that part of it providing for monthly statements—was dictated by ordinary business prudence, and the contract with Banks, without that provision. would have been materially different from the contract which was actually made. The provision requiring monthly statements was one which was calculated to give to the plaintiff reasonable supervision over the peculiar agency which was created by the contract, and as the defendant, in its contract of suretyship, incorporated the contract of Banks with the plaintiff into the contract of suretyship, the provision as to monthly statements may have had its influence upon the defendant when it entered into the contract of suretyship. An agent who, under the terms of his contract with his principal, is required to make monthly statements of his acts and doings as agent, is much less likely to fall into habits of negligence or as to that matter, into acts of actual wrong against his principal, than is an agent who, under the terms

of his contract of agency, is left without restrictions as to making statements to his principal. The provision which we have quoted, taken in its entirety, was a material provision of the contract which the defendant in this case guaranteed that the agent would perform. —*Fidelity Mutual Life Ass'n v. Dewey,* 83 Minn. 389, 86 N. W. 423, 54 L. R. A. 945; *Morrison v. Arons,* 65 Minn. 321, 68 N. W. 33.

(2) 2. This suit was brought by the plaintiff against the defendant, upon the bond, which the reporter has set out, for the recovery of $4,467.19, balance due by Banks to the plaintiff for coal shipped to him by the plaintiff under the contract which the plaintiff made with Banks and which the reporter has above set out.

The defendant, among other pleas to the complaint, filed the following: "(5) Defendant says that in and by the terms of said contract Banks was to keep an accurate account showing the amount of coal sold, to whom sold, the price paid therefor, and the sum collected thereon, and to render monthly statements on or before the 5th of each month showing the amount of such sales, and to pay the plaintiff on or before the 20th of each month for the coal shipped to him up to the first day of that same month, and plaintiff avers that the defendant relieved said Banks of his obligation to comply with this term of said contract without the consent of this defendant."

We do not find any plea, which the trial judge allowed to remain with the jury, which presents the defense which the defendant, by the above plea, undertook to make to this action. In our opinion counsel for appellant, in his brief, has properly presented the ruling of the trial court in sustaining the demurrer of the plaintiff to the above plea to us for our consideration, and the discussion below is confined to the

points which were taken against the sufficiency of the plea by the grounds of demurrer which were filed to the plea.

(3, 4) 3. There are three well-defined rules of law which are in perfect harmony with each other, and which, as applicable to contracts of suretyship, are plainly recognized by our decisions. In the case of *Saint v. Wheeler & Wilson Mfg. Co., supra,* this court, after careful consideration, declared two of these rules as follows: (1) Mere indulgence granted by the employer to the principal, or an agreement to give the principal further time to make good a default, if not supported by any new consideration which would make it binding as a contract, does not discharge the surety. (2) If the employer discovers the dishonesty of the principal during the service, and fails to give notice thereof to the surety and continues the principal in the service, the surety is discharged from subsequent liability for subsequent defaults.

(5) In the case of *First National Bank v. Fidelity & Deposit Co.,* 145 Ala. 335, 40 South. 415, 8 Ann. Cas. 241, this court declared (3) that: "While, as between the original parties to the contract, either party may waive any of its provisions, yet, when a third party becomes interested in the contract by binding himself to its faithful execution, the contract becomes a part of his obligation, and its provisions cannot be waived so as to affect his interest without his consent."

In that case this court took occasion to show that the two rules declared in *Saint v. Wheeler & Wilson Mfg. Co., supra,* were not in conflict with the rule last quoted, and in that case the court also quoted with approval the following language of the Supreme Court of the United States, in the case of *Prairie State Bank v. United States,* 164 U. S. 227, 17 Sup. Ct. 142, 41 L.

Ed. 412, viz.: "The rulings of this court have been equally emphatic upon the agreement, with reference to which he entered into his contract of suretyship, and to exact compliance with its stipulations."

To the same effect are the cases of *Anderson v. Bellenger & Ralls,* 87 Ala. 334, 6 South. 82, 4 L. R. A. 680, 13 Am. St. Rep. 46, and *Manatee County State Bank v. Weatherly,* 144 Ala. 655, 39 South. 988.

While we are on this subject we desire to say that we are not unmindful of the salutary proposition that: "The contract of suretyship is not that the obligee will see that the principal performs its condition, but that the surety will see that he performs them."—*Williams v. Lyman,* 88 Fed. 237, 31 C. C. A. 511.

But the contract which the surety binds himself to see performed is the contract which he actually underwrites for his principal, and not some other contract which his principal and employer may see proper to make for themselves.—*First Nat. Bank v. Fidelity & Dep. Co., supra; Anderson v. Bellenger & Ralls, supra; Manatee County State Bank v. Weatherly, supra; Prairie State Bank v. U. S , supra.*

In discussing the question presented by the demurrer to the above plea, we are not dealing with the question of the mere neglect of the employer to require his agent to comply with the terms of his contract, but we are dealing with the question as to whether the courts will force a surety to answer for the default of his principal when the employer has relieved the principal of a material requirement of the contract to the performance of which the surety bound himself. A careful examination of the cases of *Aetna Ins. Co. v. Fowler,* 108 Mich. 557, 66 N. W. 470; *Home Insurance Co. v. Holway,* 55 Iowa, 571, 8 N. W. 457, 39 Am. Rep. 179; *Williams v. Lyman,* 88 Fed. 237, 31 C. C. A. 511;

*McMullen v. Winfield Bldg. Asso.,* 64 Kan. 298, 67 Pac. 892, 56 L. R. A. 924, 91 Am. St. Rep. 236; *Fanning v. Murphy,* 126 Wis. 538, 105 N. W. 1056, 4 L. R. A. (N. S.) 666, 110 Am. St. Rep. 946, 5 Ann. Cas. 435; *Watertown Fire Ins. Co. v. Simmons,* 131 Mass. 85, 41 Am. Rep. 196; *Frelinghuysen v. Baldwin* (D. C.) 16 Fed. 452; *Pittsburgh, etc., Ry. v. Shaeffer,* 59 Pa. 350; and *Chew v. Ellingwood,* 86 Mo. 260, 56 Am. Rep. 429— cited by counsel for appellee in their brief, convinces us that the propositions announced in those cases are not applicable to the question which we now have under discussion. On the other hand, it seems to us that under the rules laid down by this court in *First National Bank v. Fidelity & Deposit Company, supra, Anderson v. Bellenger & Ralls, supra, Manatee County State Bank v. Weatherly, supra,* and by the Supreme Court of the United States in *Prairie State Bank v. U. S., supra,* the trial judge committed reversible error in sustaining the plaintiff's demurrer to the above quoted plea. If, as the plea alleges, the plaintiff relieved Banks of that requirement of his contract relative to rendering monthly statements of his acts and doings as agent, then the plaintiff made a material alteration in the contract which the defendant guaranteed the performance of by Banks (*Fidelity Mutual Life Ass'n v. Dewey, supra; Morrison v. Arons, supra*), and the plaintiff thereby released the surety from the obligations which in its contract of suretyship it assumed (*First Nat. Bank v. Fidelity & Dep. Co., supra; Anderson v. Bellenger & Ralls, supra; Manatee County State Bank v. Weatherly, supra*).

4. While there is some divergence of opinion among courts of last resort with reference to some of the questions presented by this record, it seems to us that the rules which were laid down by this court in *Saint v.*

*Wheeler & Wilson Mfg. Co., supra, Anderson v. Bellenger & Ralls, supra,* and *Manatee County State Bank v. Weatherly, supra,* will furnish to the trial judge a sufficient guide for the next trial of this case if one is had. We deem it unneccessary, therefore, to discuss any one question presented by the record.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ.,

SAYRE, J.— (Concurring.)—I subscribe to the principle of the leading opinion. I think, however, that the court in sustaining plea 5 against the demurrer addressed to it has departed from the rule, as this court has heretofore construed it, which requires a plea to set out the facts relied upon in defense. For example it was held in *Osborne v. Alabama Steel & Wire Company,* 135 Ala. 571, 33 South. 687, that a plea of contributory negligence—which, I take it, is entitled on demurrer to as much consideration as any other plea of confession and avoidance—to withstand demurrer, must aver a state of facts to which the law attaches the conclusion of negligence on the part of plaintiff. Plea 5 in the present case merely states the conclusion that plaintiff "relieved" Banks of his contract to duly report sales and pay over money at stated intervals. Under this plea, defendant, it may be presumed, may have intended to prove, either an express agreement between plaintiff and Banks relieving the latter of his duty under the contract defendant had guaranteed, or that Banks had been by implication relieved, so far as defendant was concerned, by consequence of his failure to report sales and pay over money and plaintiff's failure to report that fact to defendant within a reasonable time—and this last, as the further progress of the

case developed, was the line of defense followed. According to the rule heretofore followed, in many cases at least, the plea should have alleged the fact from which it drew its conclusion. I must say further, however, that the rule of *Osborne v. Alabama Steel & Wire Co.* is an impossible rule; for, in many cases, the conclusion to be drawn is, in the nature of things, a conclusion of fact to be drawn by the jury, though the evidence be without conflict.—*Evans v. Alabama-Georgia Syrup Co.*, 175 Ala. 85, 56 South. 529. Further, I think I may say, without dwelling at too great length on my individual opinion, that I have always thought the rule alluded to has been applied with overstrictness in many cases. The plea in question did not need to set out the evidence; it fairly apprised plaintiff of the general nature of the proposed defense. Hence my concurrence notwithstanding the plea was not up to the mark set by many of our adjudications.