(79 South. 57)

ALABAMA FIDELITY & CASUALTY CO.
v. ALABAMA FUEL & IRON CO.
(6 Div. 665.)

(Supreme Court of Alabama. Feb. 7, 1918.
Rehearing Denied May 9, 1918.)

1. PRINCIPAL AND SURETY ⊜125—RELEASE OF SURETY.
    Where defendant became surety on bond of coal dealer to a wholesaler whose contract required monthly settlement and accounting, the mere fact that the wholesaler made shipments of coal to the shipper for which he did not pay in full, and that the dealer did not make monthly reports and payments, did not discharge the surety, though it had no notice of such conduct; the wholesaler not having consented or acquiesced therein.

2. PRINCIPAL AND SURETY ⊜122 — DISCHARGE OF SURETY—FAILURE TO TERMINATE CONTRACT ON FIRST DEFAULT.
    Where coal wholesaler required bond of retailer, stipulating for payments and accounting each month, the wholesaler, in order to preserve its rights against the surety, was not required, on the first occasion when the accounting at the end of the month was not made, to terminate the contract immediately.

Appeal from Circuit Court, Jefferson County; H. A. Sharpe, Judge.

Action by the Alabama Fuel & Iron Company against the Alabama Fidelity & Casualty Company. Judgment for plaintiff, and defendant appeals. Affirmed.

One R. C. Banks made a contract with the appellee, whereby he (Banks) undertook to handle coal for said company in Montgomery. The contract was in writing. The performance of this contract by Banks with the appellee company was guaranteed by the appellant. A copy of the contract by Banks with the appellee and a copy of the contract of guaranty by the appellant is set out in the record of the case on the first appeal. 190 Ala. 397, 67 South. 318.

This suit is for recovery against the surety on the contract of guaranty there set out. In the guaranty contract the appellant bound itself "to the faithful performance by Banks of all the provisions of his said contract." In the contract of Banks with the appellee among other provisions was one to the effect that Banks obligated himself to keep an accurate account, showing the amount of coal sold, to whom, price, sum collected, etc., and to render monthly statements on or before the 5th of each month showing the amount of such sales and also to pay the appellee, on or before the 20th of each month, for all coal shipped to him (Banks) up to the 1st day of that month, except in such cases as may be covered by special agreement in writing between the parties. On June 15, 1915, the following plea was filed:

"B. That the contract sued upon for the performance of which on the part of said Banks this defendant became bound on said bond as surety provided that monthly settlements should be made by Banks with the plaintiff as specified in said contract, including the payment of all money collected for coal which had been sold, and that settlements were not made, and Banks defaulted thereon in not making said settlements and not paying over the proceeds of coal sold, and that the plaintiff continued to ship coal to Banks under said contract after Banks' failure to make the monthly payments as required by said contract without the consent of this defendant, and that the recovery here sought is for coal shipped after Banks' default."

Plea A was an amplification of what is set up in plea B, reciting the agreement on the part of Banks to render statements and to make monthly payments, and reciting in detail the shipments of coal by the appellee to Banks and the amount thereof from the month of October, 1911, up to and including June, 1912; that statements were rendered by Banks showing the number of pounds of coal sold during the months of October and November, 1911, and for no other months; the first statement being rendered November 1, 1911, and the second December 5, 1911. But these statements did not show to whom the coal was sold nor the price paid therefor, and alleges that this course of dealing was without the consent of the defendant, and that by such course of dealing plaintiff waived the stipulations in the contract requiring Banks to render monthly statements,

etc., and thereby the defendant was discharged of its liability on said bond. The court sustained demurrer to pleas A and B, and they were amended so as to set up an acquiescence on the part of the appellee in the violation of the terms of the contract by Banks with reference to said monthly statements, etc.; and demurrer to the pleas as thus amended was overruled.

Charges numbered 1, 4, and "A" were the affirmative charges with hypotheses for the defendant, and were refused.

Charges K and L, refused to defendant, read as follows:

"K. The court charges the jury that, if they believe that plaintiff assented to the statement contained in Banks' letter of date April 30, 1913, 'I would like to remind Mr. Adams of what he told me when I told him that I knew there would be times when I could not collect for this coal fast enough to remit in full every month,' this was a deviation from the contract guaranteed by this defendant as surety upon the bond, and the plaintiff cannot recover for the coal shipped to Banks after the assent by plaintiff, if you believe that plaintiff assented to said statement."

"L. The court charges the jury that upon Banks' failure to render statements, and to pay as provided in the contract, it was the duty of plaintiff to discontinue the shipment of coal to him."

Upon the trial of the cause the contract and bond were introduced, together with an account between the appellee and Banks as agent, showing the amount of coal shipped, payments made, and the balance due. Letters were also introduced in evidence written to Banks by the appellee, in some of which settlement of account was insisted upon, and from Banks to the appellee, some of which set up excuses for delay in making payment in full, and inclosing check in part payment. The cause was tried on count 1 as last amended, the plea of the general issue, and pleas 5, A, and B as amended. Issues of fact presented by these pleadings were submitted to a jury, resulting in a verdict for the plaintiff. A motion for new trial was overruled, and defendant prosecutes this appeal.

Garber & Garber, of Birmingham, and John R. Tyson, of Montgomery, for appellant. Percy, Benners & Burr, of Birmingham, for appellee.

GARDNER, J. This is the third appeal in this cause. Ala. Fid. & Cas. Co. v. Ala. Fuel & Iron Co., 190 Ala. 397, 67 South. 318; Ala. Fuel & Iron Co. v. Ala. Fid. & Cas. Co., 197 Ala. 669, 73 South. 374. Upon the first appeal, it was held that plea 5, which alleged that the plaintiff relieved Banks of his obligation to comply with the terms of the contract relative to making monthly statements and payments for the coal shipped him without the consent of the defendant, set up a good defense, in that it disclosed a material alteration in the contract by the plaintiff without the consent of the surety, and thereby released the surety from the obligation which in its contract of suretyship had been assumed. On the second appeal construing the contract between the parties, in passing upon the sufficiency of count 1 as amended, it was held that the surety guaranteed that Banks would pay for the coal which was shipped to him, and that whether or not Banks had sold the coal was a matter of no consequence so far as the liability on the bond was concerned.

[1] The first assignments of error relate to the ruling of the court in sustaining demurrer to pleas A and B as originally framed. The substance of said pleas appear in the foregoing statement of the case. In the contract between Banks and the appellee, the former had agreed to make monthly statements, and monthly payments on account of the coal shipped. The condition of the bond executed by the appellant was for the faithful compliance by the said Banks with all the provisions of said contract required of him to be performed during the term of the bond. The substance of these pleas was that the appellee made shipments of coal to Banks during a period of months, upon which he (Banks) made sundry payments on account, but did not pay in full, and did not make monthly reports or monthly payments as he had agreed. They set up no consent or acquiescence on the part of the appellee in Banks' default. "A surety is not discharged from liability from the mere fact that principal is continued in the master's employment after he has failed to make payments promptly, of which fact the surety has not been advised." Home Ins. Co. v. Holoway, 55 Iowa, 571, 8 N. W. 457, 39 Am. Rep. 179. See, also, to like effect, Watertown Fire Ins. Co. v. Simmons, 131 Mass. 85, 41 Am. Rep. 196; Fanning v. Murphy, 126 Wis. 538, 105 N. W. 1056, 4 L. R. A. (N. S.) 666, 110 Am. St. Rep. 946, 5 Ann. Cas. 435; Williams v. Lyman, 88 Fed. 237, 31 C. C. A. 511; Ætna Fire Ins. Co. v. Fowler, 108 Mich. 557, 66 N. W. 470. In Watertown Fire Ins. Co. v. Simmons, supra, the court said:

"But the creditor owes no duty of active diligence to take care of the interest of the surety. It is the business of the surety to see that his principal performs the duty which he has guaranteed, and not that of the creditor. * * * Mere inaction of the creditor will not discharge the surety unless it amounts to fraud or concealment."

Upon the first appeal in this cause the underlying principle set out in the foregoing cases was recognized by this court in the following language introductory to the quotation from Williams v. Lyman, supra:

"We are not unmindful of the salutary proposition that 'the contract of suretyship is not that the obligee will see that the principal performs its condition, but that the surety will see that he performs them.'"

On this first appeal, the court also held that mere indulgence granted by the employer to the principal would not discharge

the surety. The same principle seems to have been recognized by the Supreme Court of Minnesota in Manchester Fire Ins. Co. v. Redfield, 69 Minn. 10, 71 N. W. 709, wherein the court, speaking to this question, said:

"The import of the instruction was that if plaintiff had notice, actual or constructive, that Redfield was in default in remitting money collected by him monthly according to the terms of the bond, whatever the cause of the default, whether dishonesty, or mere negligence, oversight, or accident, it was bound immediately to either dismiss its agent or notify the sureties. This rule, if correct, would apply to a breach of any other contract duty of the agent, whatever its cause or nature. The master or employer owes no such duty of active diligence to take care of the interest of the surety. The latter has guaranteed the faithful performance of his duties by his principal, and he himself owes a duty to see that his principal performs these duties. The cardinal rule of duty which the master or employer owes to the sureties of his servant is entire good faith."

If the two cases from the Supreme Court of Minnesota cited by counsel for appellant (Fid. Mut. Life Ass'n v. Dewey, 83 Minn. 389, 86 N. W. 423, 54 L. R. A. 945, and Morrison v. Arons, 65 Minn. 321, 68 N. W. 33) are to be construed as holding to a contrary view of the above authorities, they could not be considered in harmony with the weight of authority, nor entirely reconcilable with Manchester Fire Ins. Co. v. Redfield, supra. We are of the opinion that the authorities above noted clearly demonstrate the insufficiency of pleas A and B. We also think that the assignments of demurrer were sufficient to take the point, and that there was no error in the action of the court in sustaining the demurrer thereto.

The court permitted the jury to determine whether or not from all the evidence in the case the plaintiff had so acquiesced in the violation of the terms of the contract by Banks, in regard to the monthly statements and monthly payments, as to constitute a waiver of those provisions, and therefore an alteration of the contract so as to release the surety. We are of the opinion, upon an examination of the evidence offered, consisting largely of correspondence between the parties, that the question of acquiescence, consent, or waiver on the part of the plaintiff of these provisions was properly submitted for the jury's determination, and that the affirmative charge was properly refused.

Whether or not charge K is subject to criticism for singling out a portion of the evidence need not be determined, as we think its refusal could properly be rested upon the ground that it does not appear what Mr. Adams told Banks when Banks reminded him to the effect, as quoted in said charge, or when any such conversation occurred.

The contract between Banks and the appellee provided that it should remain in force indefinitely, with the understanding that either party could at any time terminate the same by giving 60 days' notice in writing, and further providing that Banks should execute a surety bond to insure the faithful compliance on his part of the provisions of the contract. It clearly appears, therefore, that the appellee was unwilling to ship Banks coal without an adequate guaranty for the payment thereof; the appellant surety company gave this guaranty.

[2] Charge L, refused to the defendant, would have required that the appellee terminate its contract with Banks immediately upon his failure to render statements and to pay the first monthly payment, notwithstanding the fact that these provisions had been guaranteed by the appellant in its bond. As previously shown, mere indulgence granted by the appellee to Banks in this particular would not release the surety, nor was it required on that account to terminate the contract. Ætna Ins. Co. v. Fowler, supra. If such duty rested on the appellee, then the contract of suretyship was indeed of little value. Charge L was properly refused.

We have carefully considered the action of the court in overruling the motion for a new trial, but we are not persuaded of error in this respect. It results that the judgment of the court below will be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.