173 So. 506

## MARYLAND CASUALTY CO. v. CUNNINGHAM.

### 8 Div. 754.

Supreme Court of Alabama.

March 11, 1937.

Rehearing Denied April 15, 1937.

81

Wm. Milliken and L. R. Timberlake, both of Florence, for appellee.

Andrews & Almon, of Sheffield, for appellant.

GARDNER, Justice.

Plaintiff contracted with one Mullins for construction of a dwelling house, and for his better protection required a surety bond indemnifying him against damages arising from a breach of the construction contract, which bond this defendant executed, said Mullins signing as principal thereon. The bond refers to the contract (executed contemporaneously therewith), and makes it a part thereof. The house was, under the contract, to be completed by December 1, 1935, but on that date was only partially

completed. The work is now abandoned, and the contractor's present residence is unknown.

From our view of the case a consideration of the several assignments of error may be brought within a narrow compass. This for the reason that we find ourselves out of accord with defendant's insistence as to a proper construction of the undertaking here sued upon, which construction, on its part, constitutes the very foundation of the defense to this suit on the bond.

Defendant lays stress upon the principle of law announced in First National Bank v. Fidelity & Deposit Co., 145 Ala. 335, 40 So. 415, 5 L.R.A.(N.S.) 418, 117 Am.St.Rep. 45, 8 Ann.Cas. 241, upholding the right of the surety to stand upon the agreement, with reference to which he entered into his contract of suretyship, and to exact compliance with its stipulations, and the consequent right of the surety to be relieved from liability if there is a material alteration or breach of the contract by the other parties thereto.

We find no difficulty with the stated legal principle (Alabama Fidelity & Casualty Co. v. Alabama Fuel & Iron Co., 190 Ala. 397, 67 So. 318; First National Bank v. Fidelity & Deposit Co., supra; Jefferson Lumber Co. v. Powers, 223 Ala. 63, 134 So. 464; Birmingham News Co. v. Whitley, 221 Ala. 550, 130 So. 73), but the question arises as to its application to the instant case. Defendant argues upon the theory that a contract, similar in all material respects as that considered in First National Bank v. Fidelity & Deposit Co., supra, is here presented, and insists plaintiff must show, as a condition precedent to recovery, that in paying the contractor as the work progressed he retained a sum equal to at least 10 per cent. of the amount of such labor and material; and that as the proof shows no such retention, recovery should be denied, under the principle of the above-cited authorities rested in part upon the theory also that such reservation serves as a stimulus to the contractor for the completion of the work. First National Bank v. Fidelity & Deposit Co., supra.

True, the bond here sued upon and the building contract to which it refers are to be construed together, but so considered, we are not persuaded that a bond or contract analogous to that considered in First National Bank v. Fidelity & Deposit Co., supra, is here presented. Here there is no requirement for estimates and certificates with payment based thereon, and reservation of a percentage thereof both for material and labor, as was specifically provided in the First National Bank Case, supra. The contract here in question requires no estimates to be made and certificates of the architect furnished. The bond in this respect merely recites: "and shall also retain that proportion, if any, which such contract specifies the obligee shall or may retain of the value of all work performed or materials furnished in the prosecution of such contract (not less however, in any event, than ten percentum of such value), until the complete performance by the principal of all the terms, covenants and conditions of said contract on the principal's part to be performed, and until the expiration of the time within which liens or notices of liens may be filed, and until the discharge of such liens, if any." And so far as the construction contract is concerned the following excerpt contains the reference to the matter of payment: "That the party of the first part does hereby employ the party of the second part to erect a dwelling according to plans and specifications hereinbefore agreed to, at and for the sum of $6300. Of this sum $5400.00 is to be paid as the work progresses by party of the first part out of a loan to be obtained through the Federal Housing Authority and the balance of $900.00 is to be paid in installments of $180.00 per year for five years, beginning one year after the completion of the building, said $900.00 to be evidenced by the promissory note of the party of the first part to the party of the second part, with six per cent. interest, and each payment to be due on or before the specified due dates."

Clearly, therefore, a construction of the bond as requiring a reservation of 10 per cent. of the amount of labor and material as paid for as the work progressed, would necessitate an addition to or alteration of the language used and favorable to the bondsmen. But this is a reversal of the rule of construction here proper to be observed. "Ambiguous language will ordinarily be construed against the surety if it is employed by him and in favor of the obligee." 50 Corpus Juris, 78.

A like rule has been in numerous instances here applied to insurance policies. Hill v. Ocean Acc. & Guar. Corp., 230 Ala. 590, 162 So. 376. It is expressed by the

New York court in Smith v. Molleson, 148 N.Y. 241, 42 N.E. 669, 670, in the following language: "If the surety has used ambiguous language, and the party secured has advanced his money on the faith of the interpretation most favorable to his rights, that will, ordinarily, prevail, if the instrument is open, reasonably, to such interpretation." These observations are here peculiarly applicable.

■ Plaintiff did not reserve 10 per cent. of the money paid for labor and material as he paid the same, as the contract expressly provided a reservation considerably in excess of such percentage to be paid on future dates. This, plaintiff considered, met the terms of the contract. And we think from the ambiguous language of the contract he was justified in such interpretation. The building contract shows the total price of $6,300 for the completed job, with $5,400 of this sum payable as the work progresses, and $900 on time installments. The bond says nothing concerning payment as the work progresses, but merely a retention of that proportion, if any, which the contract specifies, not less, however, than 10 per cent. of such value, reference being made to time of completion of the work and the retention of lien. Clearly the contract may be very reasonably interpreted to the effect that the time payment of $900 met all requirements. The ambiguous language used by the surety justifies the obligee in a construction most favorable to his rights.

■ Plaintiff so construed the bond and parted with his money on the strength of this security. He acted in entire good faith (White's Adm'r v. Life Ass'n of America, 63 Ala. 419, 35 Am.Rep. 45), and undisputedly paid, through the bank, as the work progressed, keeping such supervision of the work as his time and knowledge of such matters permitted. He had no architect, as he understood one Riley (representing the Federal Housing Administration, through which $4,900 of the money was borrowed) was to make inspections and serve the purpose. Both he and Riley did make inspections. Mullins, the contractor, secured the money through the bank, giving statements as to the purpose and application of each withdrawal for the job. The payments were thus made as the work progressed. True, subsequent events proved the payments were too liberal, or that the contractor may have diverted some of these advancements to other purposes, as it is clear all of the money was not represented in the work as partially completed when abandoned. But neither the bond nor the contract called for an architect or any certificate, nor for periodic inspection; nor, as we construe it, a reservation of any percentage of these particular payments. And it cannot be said that under the terms of this undertaking the duty rested on plaintiff to do more to guard against any dishonesty of dealing on the part of the contractor. He looked to the bond for some protection, and it may be observed that the salutary principle still prevails that the contract of suretyship is not that the obligee will see that the principal performs its conditions, but that the surety will see that he performs them (Alabama Fidelity & Casualty Co. v. Alabama Fuel & Iron Co., 190 Ala. 397, 67 So. 318), though, of course, whatever is required of the obligee as a condition precedent to recovery must be made to appear.

But what we have said suffices to show our conclusion that the obligee has so complied, and that other requirements insisted upon are based upon a construction of the contract with which we are not in accord.

■ There were plans and specifications on blank forms of the Federal Housing Administration which needed explanation. This the court properly allowed to be done. There was no formality particularly required in that regard, and the oral proof but explained the written memorandum in reference thereto. No change was made in such plans that would increase the amount to be paid (a stipulation of the bond), and, indeed, what few minor changes were made were favorable to the contractor. We find nothing in the matter of plans and specifications standing in the way of plaintiff's recovery.

■ By reason of the failure of the contractor to complete the building on December first, plaintiff was required to rent living quarters for his family, and was properly allowed to show the amount paid, which was reasonable and below the maximum allowed under the terms of the bond. All the parties knew the purpose of the contract was for the construction of a dwelling for plaintiff, and rental for other quarters was reasonably to have been anticipated in event of failure to complete the building on the agreed date.

The building contract also provided for attorney's fee in the event the owner was required to secure an attorney on account of its breach. This item as well as the rental paid were damages suffered on account of the breach of the contract and came within the protection of this bond, which was intended to indemnify plaintiff "against any loss or damage directly arising" out of such breach. 9 Corpus Juris, 809.

Other assignments bear relation to the matter of construction of the contract as contended by defendant, which we have treated herein, and we do not deem they need separate treatment here.

The testimony was heard orally before the trial court without a jury. There is no insistence the judgment rendered was excessive in any manner, and it would appear was justified by the undisputed proof.

As to the complaint, we need not stop to inquire whether under strict rules of pleading more detail of facts rather than conclusions should have been averred, as in no event, under the circumstances here shown, could any ruling thereon have resulted prejudicially to defendant.

Upon consideration of the whole case, we find nothing justifying a disturbance of the finding of the trial court, and the judgment appealed from will be accordingly here affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.